Daniel J. FOLEY, and Zita A. Foley, his wife, Plaintiffs and Joint Appellants-Petitioners,

v.

CITY OF WEST ALLIS, a municipal corporation, Defendant-Respondent,

Thomas C. KOWALSKI and American Family Mutual Insurance Company, Defendants and Third-Party Plaintiffs-Respondents,

ALLSTATE INSURANCE COMPANY, Third-Party Defendant-Respondent.

Supreme Court

*No. 81–1747. Argued June 1, 1983.—Decided July 1, 1983.*

(Also reported in 335 N.W.2d 824.)

For the petitioners there was a brief by *Mark W. Ninneman* and *Polland, Ninneman & Kohn,* Milwaukee, and *Frank Doster,* Brown Deer, and oral argument by *Mark W. Ninneman.*

For the defendant-respondent there was a brief and and oral argument by *Michael J. Sachen,* city attorney, West Allis.

For the defendants and third-party plaintiffs-respondents there was a brief by *John U. Schmid, Jr., Mark A. Grady,* and *Borgelt, Powell, Peterson & Frauen, S.C.,* Milwaukee, and oral argument by *Mr. Schmid* and *Mr. Grady.*

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals filed on September 27, 1982, affirming an order of the Cir-

cuit Court for Milwaukee County, Harold B. Jackson, Jr., Circuit Judge. The circuit court dismissed the plaintiffs' personal injury action on its merits because according to its calculations based on the jury's special verdict answers, each plaintiff's contributory negligence was greater than each defendant's negligence. In making its calculations, the circuit court treated each plaintiff's failure to wear available seat belts as it would treat any other form of negligence.

For the reasons set forth below, we hold that the circuit court erred in treating negligence consisting of failure to wear available seat belts like other kinds of negligence for the purposes of determining whether a plaintiff can recover from a defendant under the comparative negligence statute, sec. 895.045, Stats. 1981–82.[1] When negligence consisting of failing to wear an available seat belt is not a cause of the collision but is a cause of a party's injury, such negligence should not be used to determine the injured party's contributory negligence for purposes of sec. 895.045, but should be used only to reduce the amount of damages recoverable. Accordingly, we reverse the decision of the court of appeals and remand the case to the circuit court to enter judgment on the verdict in favor of the plaintiffs in accordance with the directions set forth in this opinion.

This case arises out of an automobile accident that occurred on January 10, 1978, in the city of West Allis.

---

[1] Sec. 895.045, Stats. 1981–82, provides as follows:

"895.045 **Contributory negligence.** Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

Daniel Foley was driving the car in which his wife Zita Foley was a passenger. As he approached the intersection of 92nd and West Washington from the north, defendant Kowalski's car approached the same intersection from the south. Kowalski attempted to make a left turn. Neither driver saw the other because snow piled six to eight feet high on the median obstructed their vision. Kowalski pulled into the intersection and stopped in the median between the two hills of snow. Although he could not see oncoming traffic, he decided to pull out cautiously. He moved the nose of the car into oncoming traffic. At that point, he saw the Foley car, and Foley, moving at about 30 m.p.h., saw Kowalski. Although Foley jammed on the brakes, a collision occurred. Daniel Foley's head hit the ceiling of his car. Zita Foley was thrown into the dashboard, injuring her forehead, knees, and right hand and arm. Neither Daniel nor Zita Foley was wearing the shoulder-harness-lap seat belts with which the car was equipped.

Both Foleys filed suit against the city of West Allis, Kowalski, and Kowalski's insurance company. By virtue of cross- and counterclaims, Daniel Foley and his insurance company also became defendants in the action.

The case was tried before a jury, which concluded that all three defendants (Daniel Foley, the city of West Allis, and Kowalski) were negligent and that their negligence caused the collision. The jury also determined that both Daniel and Zita Foley, the plaintiffs, were negligent with respect to their own safety by failing to wear available seat belts. The jury further determined that the Foleys' negligence in failing to wear seat belts was a cause of their injuries.

The jury apportioned causal negligence among the three defendants relating to the collision as follows:

### "Table 1

| "Kowalski | 47% |
|---|---|
| City of West Allis | 23% |
| Daniel Foley | 30% |
| Total | 100%" |

The jury apportioned the causes of the plaintiffs' injuries, consisting of the defendants' negligence in causing the collision and the plaintiffs' negligence in failing to wear available seat belts as follows:

### "Table 2

"Daniel Foley's injuries:

| "The combined causal negligence of Kowalski, City of West Allis, and Daniel Foley in causing the collision | 83% |
|---|---|
| "The causal negligence of Daniel Foley's failure to wear a seat belt | 17% |
| | 100%" |

### "Table 3

"Zita Foley's injuries:

| "The combined causal negligence of Kowalski, City of West Allis, and Daniel Foley in causing the collision | 30% |
|---|---|
| "The causal negligence of Zita Foley's failure to wear a seat belt | 70% |
| | 100%" |

Using the jury's answers to the special verdict questions, the circuit court first determined that Daniel Foley could not recover any damages from the City of West Allis, since his negligence in causing the collision (30 percent) was greater than West Allis's (23 percent) (Table 1). Sec. 895.045, Stats. 1981–82. To determine whether Daniel Foley's negligence was equal to or less than Kowalski's so that Daniel Foley could recover from

Kowalski under sec. 895.045, the circuit court attempted first to calculate Kowalski's and Daniel Foley's "active" negligence for causing the injury (which is not the same as each of their active negligence for causing the collision, Table 1) and then to calculate Daniel Foley's total negligence causing his injury. Its calculation of Daniel Foley's total negligence had to be made by combining Daniel Foley's "active" negligence (that is, the collision negligence causing his injuries) with his "passive" negligence, that is, his failure to wear an available seat belt, which also helped to cause his injuries. To make these calculations, the circuit court looked at the total negligence causing Daniel Foley's injuries (100 percent) which was comprised of the three defendants' negligence in causing the collision plus Daniel Foley's negligence in failing to wear an available seat belt (Table 2). Since the jury determined that the defendants' combined negligence in causing the collision accounted for only 83 percent of the total negligence causing Daniel Foley's injury (Table 2), the circuit court scaled down the amount of the "active" collision negligence of each defendant (Table 1) to reflect the fact that their combined negligence caused only 83 percent of Daniel Foley's injuries. Using this scaled-down approach, the circuit court calculated Kowalski's active causal negligence for Daniel Foley's injury as 39.01 percent, that is, 83 percent of the 47 percent which the jury attributed to him as causal negligence for the collision (Table 1). The circuit court calculated Daniel Foley's active causal negligence for his own injury as 24.90 percent, that is, 83 percent of the 30 percent, which the jury attributed to him as causal negligence for the collision (Table 1). The circuit court then added Daniel Foley's "passive" seat-belt negligence causing his injury—17 percent—to the 24.90 percentage representing his "collision" negligence which caused injury, making Daniel Foley's total negligence causing his injury 41.90 percent. Since Daniel Foley's total negligence of 41.90 percent is greater than

Kowalski's total negligence of 39.07 percent, the circuit court concluded that Daniel Foley was barred from recovering from Kowalski under sec. 895.045.[2]

The circuit court determined that Zita Foley could not recover from any defendant because her total negligence causing her injury, zero percent active negligence and 70 percent "passive" seat-belt negligence, exceeded the 30 percent figure which the jury determined to be the active negligence of all the defendants causing her injury (Table 3).

The court of appeals affirmed the circuit court's order dismissing the case on its merits, holding that the Foleys had waived any objection to the special verdict questions by failing to object to them at trial and that the circuit court did not err in calculating Daniel Foley's total negligence or in barring both Foleys from recovering damages.

In accepting the Foleys' petition for review, this court limited the issues it would consider as follows:

"1. What damage recovery, if any, should Mrs. Foley be entitled to receive notwithstanding the 70% passive negligence finding?

"2. Notwithstanding possible waiver by failure to object, was the format of the special verdict proper? If not, what should its format have been?

"3. Did the trial court properly compute and then compare Mr. Foley's total negligence? If not, what should the proper method of computation and comparison have been?"

We begin with the first and third issues concerning the effect of the seat-belt defense on calculation of dam-

---

[2] For a discussion of this calculation *see* Decker and Decker, *Special Verdict Formulation in Wisconsin,* 60 Marq. L. Rev. 204 (1977); Aiken, *Proportioning Comparative Negligence—Problems of Theory and Special Verdict Formulation,* 53 Marq. L. Rev. 293, 311–15 (1970); Wis. J.I.—Civil 1591 and Comment (1979); Wis. J.I.—Civil 1592 and Comment (1982).

ages and determination of liability; we then consider whether this verdict form was proper.

This court was one of the first courts to hold that an automobile occupant has a duty based on the common law standard of ordinary care to use available seat belts, *Bentzler v. Braun,* 34 Wis. 2d 362, 149 N.W.2d 626 (1967).[3] *Bentzler* recognized that there was a demonstrable link between wearing seat belts and minimizing injuries. Failure to wear seat belts is not negligence *per se,* but "where seat belts are available and there is evidence before the jury indicating causal relationship between the injuries sustained and the failure to use seat belts, it is proper and necessary to instruct the jury in that regard. A jury in such case could conclude that an occupant of an automobile is negligent in failing to use seat belts." *Bentzler v. Braun, supra,* 34 Wis. 2d at 387. Although wearing seat belts does not prevent all injuries, it was "obvious that, on the average, persons using seat belts are less likely to sustain injury and if injured, the injuries are likely to be less serious." *Bentzler v. Braun, supra,* 34 Wis. 2d at 386. (Note omitted.)[4] The seat-belt defense is this court's recognition that in light of the realities of the frequency of automobile accidents and the extensive injuries they cause,[5] the general availability of seat belts,[6] and the

[3] Guldenschuh, *The Seat Belt Defense: A Comprehensive Guide for the Trial Lawyer and Suggested Approach for the Courts,* 56 Notre Dame Law. 272, n. 2 (1980); Wayand, *Seat Belts—A Comparative Study of the Law and Practice,* 30 Int'l & Comp. L.Q. 165, 169 (1981).

[4] *See also* Werber, *A Multi-Disciplinary Approach to Seat Belt Issues,* 29 Clev. St. L. Rev. 217, 230–31 (1980); Hoglund and Parsons, *Caveat Viator: The Duty to Wear Seat Belts Under Comparative Negligence Law,* 50 Wash. L. Rev. 1, 5 (1974).

[5] *Bentzler v. Braun, supra,* 34 Wis. 2d at 386, and appendix at 391–93; Werber, *A Multi-Disciplinary Approach to Seat Belt Issues,* 29 Clev. St. L. Rev. 217, 220–22 (1980).

public knowledge that riders and drivers should "buckle up for safety," those who fail to use available seat belts should be held responsible for the incremental harm caused by their failure to wear available seat belts.

*Bentzler* only decided that Wisconsin recognizes the seat-belt defense. Since the defense was not proved in *Bentzler,* the court did not discuss the possible ramifications of the successful seat-belt defense on liability or damages.

The circuit court in this case attempted to fit the car occupant's negligence in failing to wear available seat belts (seat-belt negligence) into the recognized category of an automobile passenger's passive negligence. This court has used the term "passive negligence" to describe the conduct of a passenger who fails to use ordinary care for his or her own safety where the passenger's conduct is found to be a cause of his or her injury but not of the collision. Active negligence describes a person's conduct in failing to use ordinary care when that conduct is a cause of the collision. A passenger can be found both actively and passively negligent, depending on the circumstances. *Theisen v. Milwaukee Automobile Mut. Ins. Co.,* 18 Wis. 2d 91, 105, 118 N.W.2d 140 (1962).

It is true that failure to use available seat belts in this case (and in the ordinary case) is not a cause of the collision and would thus appear to fall within the category "passive negligence," but we decline to label seat-belt negligence as "passive" negligence because the seat-belt defense doctrine rests on considerations different from those involved in "passive negligence."

In the usual case of passive negligence, the passenger could have prevented injury completely by taking some

[6] Seat belts are now present in more than 95 percent of all passenger vehicles in use in the United States. Werber, *supra,* note 5, 29 Clev. St. L. Rev. at 219.

action: e.g. refusing to ride with that particular driver at that particular time, or warning of a hazard. In contrast, a passenger who wears a seat belt can not usually avoid all injury. Since failure to wear seat belts generally causes incremental injuries, damage for these incremental injuries can be treated separately for purposes of calculating recoverable damages. In contrast injuries caused by passive negligence are identical to injuries caused by the active negligence in the same accident, and the damages due to passive negligence can not be separated easily for purposes of calculating recoverable damages.

To understand the distinction between passive negligence and the seat-belt negligence, it is helpful to think of the automobile accident involving seat-belt negligence as involving not one incident but two. The first incident is the actual collision, in this case the two cars hitting each other. The second incident, which is set in motion by the first and would not occur without it, occurs when the occupant of the vehicle hits the vehicle's interior. Hoglund and Parsons, *Caveat Viator: The Duty to Wear Seat Belts Under Comparative Negligence Law,* 50 Wash. L. Rev. 1, 4 (1974) ; Walker and Beck, *Seat Belts and the Second Accident,* 34 Ins. Counsel J. 349 (1967). Wearing seat belts is relevant only to the second collision and, as discussed above, may aggravate some of the damages caused by the first collision. Failure to wear seat belts may also cause additional injuries. Negligence and damages can be apportioned between the two incidents.

Since seat-belt negligence and passive negligence are distinguishable, we must determine whether seat-belt negligence should be treated differently from passive negligence. As a general rule, when there is a logical basis to allocate damages between two or more incidents

and among various parties, courts attempt to do so. Prosser, *Law of Torts,* sec. 65, p. 434–35 (4th ed. 1971). *See also Restatement (Second) of Torts* secs. 433A,[7] 465 (1975).[8] Accordingly, since damages can be allocated in a seat-belt defense case between the collision and the seat-belt negligence, we should attempt to do so. Unlike the circuit court, which combined the two types of negligence, we conclude that a fair and administrable procedure, taking into account the public policy underlying the seat-belt defense and the principles of comparative negligence enunciated in sec. 895.045, is to calculate a plaintiff's provable damages by the usual rules of negligence without regard to the seat-belt defense and then take into account the seat-belt defense by decreasing the recoverable damages by the percentage of the plain-

---

[7] Sec. 433A of the Restatement (Second) of Torts provides as follows:

"433A. Apportionment of Harm to Causes

"(1) Damages for harm are to be apportioned among two or more causes where

"(a) there are distinct harms or

"(b) there is a reasonable basis for determining the contribution of each cause to a single harm.

"(2) Damages for any other harm cannot be apportioned among two or more causes."

Comment c is applicable here since the plaintiff's negligence in not wearing a seat belt is "antecedent" to the collision.

"Such apportionment may also be made where the antecedent negligence of the plaintiff is found not to contribute in any way to the original accident or injury, but to be a substantial contributing factor in increasing the harm which ensues. There must of course be satisfactory evidence to support such a finding, and the court may properly refuse to permit the apportionment on the basis of mere speculation."

[8] Comment c to sec. 465, which relates to contributory negligence, notes that the rules stated in sec. 433A as to apportionment of harm to different causes are applicable in cases of contributory negligence. See sec. 465, *Restatement (Second) of Torts,* pp. 510–11 (1965).

tiff's causal seat-belt negligence.[9] If seat-belt negligence reduces recovery to the extent that wearing an available seat belt might have prevented injuries but does not deny all recovery to a plaintiff who failed to "buckle up," neither a plaintiff nor a defendant can reasonably complain about apportionment of damages. As Dean Prosser has commented, damage reduction when the plaintiff's prior conduct plays no part in causing the accident but aggravates ensuing damages seems to be "the better view unless we are to place an entirely artificial emphasis upon the moment of impact, and the pure mechanics of causation." Prosser, *Law of Torts,* sec. 65, p. 423–424 (4th ed. 1971).

This method of apportioning damages between the first and second incidents borrows from the apportionment technique used in two traditional tort doctrines: avoidable consequences and mitigation of damages.[10] Tort law recognizes through these doctrines that if a plaintiff does not minimize the harm, plaintiff's recovery will be reduced for damages which reasonably could be avoided. These doctrines are indirectly but not directly applicable to a seat-belt defense case because they generally apply only where plaintiff's conduct occurs after defendant's negligence.

The reduction of damages solution also comports with the doctrine of contributory negligence and our comparative negligence statute, sec. 895.045.[11] The compara-

---

[9] For another approach discussed by Canadian commentators, see Slatter, *Seat Belts and Contributory Negligence,* 4 Dalhousie L.J. 96, 109–110 (1977); Comment, *Torts, Seat Belts and Contributory Negligence,* 49 Canadian B. Rev. 475, 480–81 (1971).

[10] Prosser, *Law of Torts,* sec. 65, pp. 422–24 (4th ed. 1971); Hoglund and Parsons, *Caveat Viator: The Duty to Wear Seat Belts Under Comparative Negligence Law,* 50 Wash. L. Rev. 1, 9–10 (1974).

[11] For a discussion by the commentators of the seat-belt defense and contributory and comparative negligence, see Wayand, *Seat*

tive negligence rule is designed to reduce a plaintiff's damage in proportion to plaintiff's fault. Thus sec. 895.045, the comparative negligence statute, provides that contributory negligence does not bar a plaintiff's recovery of damages for negligence if the plaintiff's contributory negligence is not greater than the negligence of the defendant against whom recovery is sought, but that any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the plaintiff.

In this case, the circuit court erred in treating the term "contributory negligence" in sec. 895.045 as encompassing all of a plaintiff's fault—that is, active negligence, passive negligence, and seat belt negligence. The statute does not require this reading.

As we have pointed out, it is not logical or necessary to view the negligence causing the collision together with plaintiff's seat-belt negligence in a one-dimensional way when there are actually two distinct incidents contributing to the injuries. In addition, the circuit court's interpretation of the statute and the seat-belt defense would cause inequitable results, because the defendant could have a windfall. For example, in this case, Zita and Daniel Foley receive no compensation for damages

Belts—A Comparative Study of the Law and Practice, 30 Int'l & Comp. L.Q. 165 (1981); Werber, A Multi-Disciplinary Approach to Seat Belt Issues, 29 Clev. St. L. Rev. 217 (1980); Slatter, Seat Belts and Contributory Negligence, 4 Dalhousie L.J. 96 (1977); Miller, The Seat Belt Defense Under Comparative Negligence, 12 Idaho L. Rev. 59 (1975); Hoglund and Parsons, Caveat Viator: The Duty to Wear Seat Belts Under Comparative Negligence Law, 50 Wash. L. Rev. 1 (1974); Kircher, The Seat Belt Defense—State of the Law, 53 Marq. L. Rev. 172 (1970); Walker and Beck, Seat Belts and the Second Accident, 34 Ins. Counsel J. 349 (1967); Comment, Seat Belts and Contributory Negligence, 12 S.D.L. Rev. 130 (1967); Guldenschuh, The Seat Belt Defense: A Comprehensive Guide for the Trial Lawyer and Suggested Approach for the Courts, 56 Notre Dame Law. 272 (1980).

that the jury determined they could not have totally prevented and the defendants escape liability for injuries the jury determined their negligence caused.[12] We do not think such a result is reasonable if the goal is a system of tort law that is both fair and administrable. We should seek to treat the plaintiff and defendant in such a way that the plaintiff recovers damages from the defendant for the injuries that the defendant caused, but that the defendant is not held liable for incremental injuries the plaintiff could and should have prevented by wearing an available seat belt.

Our interpretation of the statute and the seat-belt defense fosters the basic principle of tort law which is to reach a fair and effective adjustment of the conflicting claims of the litigating parties on the basis of such factors as the moral aspects of the actor's conduct, the capacity of the parties to bear the loss, the prevention of future harmful conduct, and the convenience of administration of justice. Prosser, *Law of Torts*, secs. 2, 4 (2d ed. 1971). The injured party's failure to wear a seat belt did not cause the accident, and the conduct was not so wrong that the party should be completely barred from recovery for those injuries caused by the defendant's culpable conduct. Holding the driver liable for at least part of the damages may deter him or her from future harmful conduct but does not unfairly make him or her liable for injuries that the passengers with minimal effort could have prevented. We hope that passengers will also be encouraged to wear seat belts if their potential compensation for injuries is reduced. The driver, who is more likely than the passenger to be insured, may have a greater capacity to bear the loss. Since this state recognizes the seat-belt defense, the allocation of

[12] *See* Aiken, *Proportioning Comparative Negligence—Problems of Theory and Special Verdict Formulation*, 53 Marq. L. Rev. 293, 315 (1970).

damages as set forth here is not difficult to administer and does not adversely affect the conduct of the trial. The seat-belt defense already calls for use of expert testimony and special verdict forms.

On the basis of the above reasoning, we reject the circuit court's method of calculating damages and adopt the following method: (1) Determine the causal negligence of each party as to the collision of the two cars (Table 1); (2) apply comparative negligence principles to eliminate from liability a defendant whose negligence causing the collision is less than the contributory negligence of a plaintiff causing the collision (Table 1); (3) using the trier of fact's calculation of the damages, reduce the amount of each plaintiff's damages from the liable defendant by the percentage of negligence attributed to the plaintiff for causing the collision (Table 1); (4) determine whether the plaintiff's failure to use an available seat belt was negligence and a cause of injury, and if so what percentage of the total negligence causing the injury was due to the failure to wear the seat belt (Tables 2 and 3); (5) reduce the plaintiff's damages calculated in step (3) by the percentage of negligence attributed to the plaintiff under step (4) for failure to wear an available seat belt for causing the injury. In this case and in the usual case where the failure to wear seat belts is not a cause of the collision, seat-belt negligence will have no effect on the calculation of recoverable property damages.

In this case, assuming for a moment that the jury's figures are accepted, Zita Foley would be allowed to recover 30 percent of her total damages, since 70 percent of those damages were caused by her failure to wear a seat belt (Table 3); Daniel Foley would be able to recover his total damages reduced by his proportion of contributory negligence causing the initial collision of

the automobiles, 30 percent (Table 1) ; and then by his seat-belt negligence, 17 percent (Table 2).

We now turn to the question of whether the special verdict was proper.[13] The Foleys argue that the special

[13] The following special verdict questions were asked:

"1. At or immediately prior to the collision of January 10, 1978, was the Defendant, Thomas Kowalski, negligent with respect to the manner in which he operated his automobile?

ANSWER:     Yes
(Yes Or No)

"2. If you answered Question One 'Yes', then answer this question; otherwise do not answer it.
Was such negligence a cause of the collision?

ANSWER:     Yes
(Yes or No)

"3. At or immediately prior to the collision of January 10, 1978, was the Defendant, the City of West Allis, negligent in creating and failing to remove the accumulation of snow on the median at the intersection in question?

ANSWER:     Yes
(Yes or No)

"4. If you answered Question Three 'Yes,' then answer this question; otherwise do not answer it.
Was such negligence a cause of the collision?

ANSWER:     Yes
(Yes or No)

"5. At or immediately prior to the collision on January 10, 1978, was the Plaintiff, Daniel Foley, negligent in the manner in which he operated his automobile?

ANSWER:     Yes
(Yes or No)

"6. If you answered Question Five 'yes', then answer this question; otherwise do not answer it.
Was such negligence a cause of the collision?

ANSWER:     Yes
(Yes or No)

"7. If you answered 'yes' to two or more of Questions 2, 4 and 6, then answer this question; otherwise do not answer it.

Assuming the total causal negligence related to the collision to be 100%, what percentage of causal negligence do you attribute to the following?

| | | |
|---|---|---|
| A. | Thomas Kowalski | 47% |
| B. | The City of West Allis | 23% |
| C. | Daniel Foley | 30% |

"8. At or immediately prior to the collision of January 10, 1978, was the Plaintiff, Daniel Foley, negligent with respect to his own safety?

ANSWER:     Yes
(Yes or No)

"9. If you answered Question Eight 'yes', then answer this question; otherwise do not answer it.
Was the negligence of Daniel Foley a cause of his injuries?

ANSWER:     Yes
(Yes or No)

"10. If you answered 'yes' to one or more of Questions 2, 4 and 6, and also have answered 'yes' to Question Nine, thereby finding that there was causal negligence on the part of one or more of the drivers or the City of West Allis, and that the Plaintiff, Daniel Foley, also was a cause of his own injuries, then answer this question; otherwise do not answer it.

What percentage of all the causal negligence involved in the accident of January 10, 1978, which produced the injuries to Daniel Foley do you attribute to:

A. The combined causal negligence in causing the collision of Thomas Kowalski, the City of West Allis, and Daniel Foley        83%
B. The causal negligence of Plaintiff, Daniel Foley, in Foley, in causing his own injuries        17%
TOTAL        100%

"11. Was the Plaintiff, Zita Foley, negligent with respect to her own safety?

ANSWER:     Yes
(Yes or No)

verdict questions were improper because the jury should
have compared the total negligence of each plaintiff,

"12. If you answered Question Eleven 'yes', then answer this
question; otherwise do not answer it.
Was the negligence of Zita Foley a cause of her injuries?

ANSWER:     Yes<br>
(Yes or No)

"13. If you answered 'yes' to one or more of Questions 2, 4 and
6 and 'yes' to Question 12, thereby finding that there was causal
negligence on the part of one or more of the drivers or the City of
West Allis, and that the Plaintiff, Zita Foley, was a cause of her
own injuries, then answer this question; otherwise, do not answer
it.

What percentage of all the causal negligence involved in the
accident of January 10, 1978, which produced the injuries
to Zita Foley do you attribute to:

A. The combined causal negligence in causing the colli-
sion of Thomas Kowalski, the City of West Allis and
Daniel Foley     30%
B. The causal negligence of Zita Foley     70%
            TOTAL     100%

"14. You must answer this question:
What sum of money will fairly and reasonably compensate the
Plaintiff, Daniel Foley, for his damages in the following respects:

A. Past pain and suffering     $1,100.00
B. Future pain and suffering     $ 0
C. Medical expenses     TO BE ANSWERED BY
            THE COURT
D. Loss of consortium     $ 400.00
E. Car insurance and rental     TO BE ANSWERED BY
            THE COURT

"15. You must answer this question:
What sum of money will fairly and reasonably compensate the
Plaintiff, Zita Foley, for her damages in the following respects:

A. Past pain, suffering and disability     $3,500.00
B. Future pain, suffering and disability     $5,000.00
C. Medical expenses     TO BE ANSWERED BY
            THE COURT

seat-belt and active, with the negligence of each defendant, not the total negligence of each plaintiff with the combined negligence of all defendants. We reject this argument because, as discussed above, it is inconsistent with the approach we have taken to seat-belt negligence.

Although we reject the Foleys' contention, we still consider whether the Foleys must be granted a new trial under our approach to the seat-belt defense or whether the special verdict questions and instructions adequately conveyed the necessary information to the jury and the jury made the necessary findings to allow the circuit court to calculate plaintiffs' recovery. Although the special verdict questions do not address explicitly the issue of seat-belt negligence as a reduction of the damages for personal injuries, we conclude that the verdict and instructions were adequate.

The verdict questions never use the words "seat belt," but it is clear that the circuit court led the jury through a systematic analysis of the causes of the injuries of the two plaintiffs to reach the proper result. First, the circuit court instructed the jury that it was to determine the causal negligence of the collision and compare the various actors' negligent conduct in causing the collision (questions 1–7). The circuit court explained that questions 8, 9, 11, and 12 involved a different concept, "passive negligence," which solely concerns "negligence which may or may not have caused the injury." The circuit

| D. Past wage loss | $1,500.00 |
| E. Loss of future earning capacity | $ 0 |

"Dated this 17 day of March, 1981.

Mrs. Elouise Shirley Young<br>FORELADY

DISSENTING JURORS

| NAME | QUESTION |
| --- | --- |
| Bonnie J. Blockton | 15–D |

_____."

court connected passive negligence with seat-belt negligence. The jury was informed that even though the special verdict did not so state, questions 8, 9, 11, and 12 inquired into the Foleys' failure to wear seat belts as the cause of their injuries. The circuit court gave the standard seat-belt instruction[14] and explained that the jury was required to determine the relation of the two types of causal negligence—the collision and the failure to wear seat belts—to the injuries. Thus, the jury was to look at each plaintiff's injury and compare the causation of the injury by the combined negligence of the defendants in causing the collision to each plaintiff's negligence in failing to wear seat belts.

We conclude that the special verdict questions and instructions adequately guided the jury to making all the relevant findings. Nevertheless the Wisconsin Civil Jury Instructions Committee might consider drafting an instruction which advises the jury that if it determines that the failure to wear a seat belt was a cause of a person's injuries, the jury must determine what percentage of the total damages for that person's personal injuries was caused by his or her failure to wear a seat belt.[15] The error in this case was not in the special verdict form or in the instructions but in the circuit court's use of the jury's answers to recalculate Daniel

[14] Wis. J.I.—Civil 1277 (1977): "The automobile in which the plaintiff was a passenger was equipped with safety belts. If you are satisfied that a belt was available to the plaintiff for his use and that he failed to use it, you must determine from the evidence in this case and the reasonable inferences therefrom whether or not the omission to use the safety belt was a failure on the part of the plaintiff to exercise ordinary care for his own safety."

[15] If this type of instruction is given, the calculation set forth in steps (4) and (5) at p. 490 should reflect the percentage of damages attributable to the plaintiff's failure to wear an available seat belt rather than the percentage of causal negligence attributable to plaintiff's failure to wear the seat belt.

Foley's negligence and hold that neither Daniel nor Zita Foley could recover damages.

Our discussion would end here, but we consider Zita Foley's contention at oral argument that she should be granted a new trial because the jury could not have found that her failure to use seat belts caused 70 percent of her injuries but only 17 percent of her husband's. We conclude that credible evidence supports the jury's determination. Defendant's expert[16] testified that the failure to wear seat belts will affect people differently, depending on the person's size, gender, and position in the automobile. He testified as to the probable impact of the failure to wear seat belts on a woman about Zita Foley's height in the passenger seat of the car and a man about Daniel Foley's height in the driver's seat. The evidence presented also showed that Zita Foley suffered far more physical damage than Daniel Foley. On the basis of this evidence, the jury could have determined that wearing a seat belt would have minimized Zita Foley's injuries more than Daniel's.

In conclusion, we hold that the special verdict form in this case was sufficient when combined with the circuit court's instructions, see D.L. v. Huebner, 110 Wis. 2d 581, 628, 329 N.W.2d 890 (1983), but that the circuit court erred as a matter of law in its use of the jury's answers. We here set forth the proper method for apportioning damages in seat-belt negligence cases and remand this case to the circuit court to allow it to make the necessary calculations and enter judgment for the plaintiffs according to the directions in this decision.

---

[16] The Foleys argued on appeal that the defendant's expert was not qualified. The court of appeals held that he was; we declined to consider the issue of the expert's qualifications on review.

*By the Court.*—The decision of the court of appeals is reversed; cause remanded to the circuit court to enter judgment on the verdict based on its calculations of damages in accordance with directions in this opinion.