219 N.J. Super. 383 (1986)
530 A.2d 387
MARY ELLEN DUNN, PLAINTIFF,
v.
GUGLIEMO DURSO, GERARDO DURSO AND THOMAS E. DUNN, DEFENDANTS.
Superior Court of New Jersey, Law Division Morris County.
Decided September 18, 1986.
*384 Edward J. Bogart, for plaintiff.
Philip M. Lustbader and David Lustbader, A Professional Association: By David Lustbader, for defendants Durso.

*385 CIVIL ACTION OPINION
MacKENZIE, J.S.C.
On a snowy February 6, 1983, an automobile operated by Gugliemo Durso on Woodland Avenue in Chatham Township collided head-on with a vehicle driven by Thomas E. Dunn. Mary Ellen Dunn, a front seat passenger in the 1981 Plymouth Reliant driven by her husband, suffered serious facial lacerations and other bodily injuries when her head struck the dashboard and the gear shift box. Although the Dunn car was equipped with lap and shoulder belt restraints, Mrs. Dunn was not using her seat belt as she did ordinarily.[1] According to her testimony, Mrs. Dunn chose not to wear the available seat belt because of the expected short trip and because she desired freedom of movement to tend to her six-month old infant, who was on the back seat. At trial, this court had to define the legal ramifications of that choice.[2]
In support of his argument that plaintiff's recovery should be reduced to the extent that her failure to use the seat belt had contributed to her injuries, defendant proposed to call Herman J. Rich, a licensed professional engineer who had conducted an engineering study of the motor vehicle accident. A report of Mr. Rich's findings and his opinion had been timely provided to plaintiff's attorney during the discovery period. R. 4:17-4. Mr. Rich was prepared to testify at trial that:

*386 [W]hen a forward moving motor vehicle is involved in a front end collision, there is an abrupt change in its inertial state due to the sudden retardation of its forward motion. Because this change is so rapid, it is not immediately transmitted to objects that are not an integral part of the vehicle or persons who are not attached to it through the use of restraints. As a result, these persons or objects continue their forward motion independent of the rapidly decelerating vehicle. There then occurs was [sic] is frequently referred to as the "second impact" in which the forward moving persons or objects encounter some part of the vehicle interior in front of them. It is this second impact that restraining devices are intended to prevent.
It was the opinion of Mr. Rich that Mrs. Dunn suffered bodily injury as the result of the second impact, an impact which would not have occurred had she been wearing her seat belt. Her injuries, according to Mr. Rich, were "attributable primarily to her failure to use the restraining devices available." Plaintiff moved, in limine, to exclude the proffered expert testimony.[3]
Is the so-called "seat belt defense" recognized in New Jersey? Stated another way, may the plaintiff recover for the full extent of her personal injuries resulting from an automobile accident where it can be shown by competent evidence that some of her injuries could have been eliminated, or at least minimized, had she worn an available seat belt? Prior decisional authority has suggested that the seat belt defense should be accepted in a suitable case. Before this trial, however, an appropriate factual situation had not arisen. Now it has, and accordingly, this court will permit Mr. Rich to offer to the jury his expert opinion on the effect of Mrs. Dunn's failure to wear her belt. In the judgment of this court, if a plaintiff acts unreasonably by failing to wear an available and operable seat belt, and such conduct demonstrably causes, or increases, the bodily injury for which compensation is sought, (s)he may not recover the incremental damages (s)he has caused. The seat *387 belt defense expresses and effectuates the long-standing principle that a defendant should not be liable for injuries (s)he did not proximately cause.[4]
Barry v. The Coca Cola Co., 99 N.J. Super. 270 (Law Div. 1967), opened the door in New Jersey, albeit cautiously, to the seat belt defense, and in so doing left open many questions. In Barry, plaintiff was a passenger in a car involved in a rear-end collision. Despite the availability of a seat belt, plaintiff did not use one. He struck the windshield, suffering severe facial injuries. On plaintiff's motion to strike the defense of contributory negligence, the Barry court was confronted with two questions: whether the failure to use seat belts constituted a defense sufficient to bar recovery to plaintiff; and, if not, whether the defense could be considered by the jury in diminution of plaintiff's damages, i.e., whether a jury could apportion damages to preclude plaintiff's recovery of such damages as may have been caused by his failure to use the seat belts. Id. at 273. As to the first question, the court found that the failure to use seat belts could not be a bar to recovery, as this omission was not a causative factor in bringing about the collision. Id. at 272. The court stressed the necessity to distinguish between negligence contributing to the accident and negligence contributing to the injuries sustained. Id. at 273.[5]
*388 Resolution of the second question required analysis of the sufficiency of the proofs. Defendant was not prepared to offer any expert evidence in support of his thesis that Mr. Barry's failure to wear his belt enhanced the likelihood of serious injury. Judge Lynch referred to Restatement (Second) of Torts, § 465 (1965) and particularly comment c thereto, incorporating the expressed standards into his analysis.[6]Comment c reads in pertinent part:
Where, however, there are distinct harms, or a reasonable basis is found for the division of a single harm, the damages may be apportioned, and the plaintiff may be barred only from recovery for so much of the harm as is attributed to his own negligence. Such apportionment is commonly made, under the damages rule as to avoidable consequences, where the plaintiff suffers an original injury, and his negligence consists in failure to exercise reasonable care to prevent further harm to himself. .. .
Such apportionment may also be made where the antecedent negligence of the plaintiff is found not to contribute in any way to the original accident or injury, but to be a substantial contributing factor in increasing the harm which ensues. There must of course be satisfactory evidence to support such a finding, and the court may properly refuse to permit the apportionment on the basis of mere speculation.
Judge Lynch accordingly determined that there was no "satisfactory evidence" to support a finding that the failure to use seat belts was a "substantial contributing factor increasing the harm" plaintiff suffered. Id. 99 N.J. Super. at 274. In the absence of expert testimony to this effect, an attempt by the jury to apportion damages would have been highly speculative. Id. at 275. The court, however, specifically stated that it was not deciding how it would have ruled had expert evidence been available. Id. at 275, 282. Moreover, the court observed that *389 the seat belt defense does not involve the application of the "avoidable consequences" doctrine, under which a plaintiff may not recover damages for injuries he may have avoided. As Judge Lynch explained, at 275, "That doctrine applies when his carelessness occurs after defendant's legal wrong has been committed. Contributory negligence comes into action before defendant's wrong has been committed." [Emphasis in original; footnote omitted.]
Although the court in Barry was compelled to reject the seat belt defense in light of the state of the record, it alluded to various other factors as supportive of its ultimate holding. Pointing to the comprehensive provisions of the Motor Vehicle Act, N.J.S.A. 39:3-1 et seq., dealing with equipment of motor vehicles and their use, the court declined to impose a duty to use seat belts in the absence of a legislative requirement. Id. at 279. In addition, the court was concerned with the practical and theoretical problems associated with damage apportionment in the seat belt situation:
This is a single injury on the record here. There can be no division, on this record, of how much or to what extent certain injuries were due to the accident, the impact itself on the one hand, or the failure to use seat belts on the other. Such a theory of permitting apportionment here would approach the question as is done where comparative negligence is accepted. And as we know, New Jersey is not such a state. [Id. at 281; Emphasis in original.]
Nonetheless, Barry did lay an important foundation upon which to evaluate the seat belt defense in subsequent cases. Indeed, the nature of a defendant's burden of causation, as set forth in Barry, was discussed approvingly in Dziedzic v. St. John's Cleaners & Shirt Launderers, Inc., 53 N.J. 157 (1969). Dziedzic involved the propriety of the trial court's striking of the affirmative defense of contributory negligence where the plaintiff was a standing passenger in a delivery truck that provided only one seat for the driver. The Supreme Court agreed with the decision of the trial judge since defendants failed to show that the plaintiff was injured more seriously by standing in the truck as she did than she would have been had she ridden as a passenger normally rides, i.e., in a seated *390 position. Id. at 162. The Court analogized to the requirement in cases involving the seat belt defense that a defendant come forward with specific evidence demonstrating the causal link between the plaintiff's failure to fasten the seat belt and the injuries suffered. Id. at 162-63.
The problem of conjecture and the absence of "specific evidence" again surfaced in Polyard v. Terry, 148 N.J. Super. 202 (Law Div. 1977), rev'd on other grounds 160 N.J. Super. 497 (App.Div. 1978), aff'd o.b. 79 N.J. 547 (1979). In Polyard, a wrongful death action arising out of an automobile accident, the State raised a question of decedent's negligence as to her injuries based on her alleged failure to wear seat belts. The trial court granted plaintiffs' motion to strike the defense. In denying the State's subsequent motion for a new trial, the court noted that the seat belt defense had not been "clearly established" in New Jersey. Id. 148 N.J. Super. at 214. The court acknowledged that the Barry decision left open the possibility that "[t]here might be circumstances where the failure to wear seat belts may be shown by evidence to have substantially contributed to the injury occurring as the result of an accident, justifying an apportionment of damages." Ibid. However, the court concluded that in the particular case before it, a situation where the plaintiff passenger was killed in the accident, it was inappropriate to apply the defense. Ibid. The court stated at 215:
It would certainly have been mere speculation and conjecture to attempt division of damages for failure to wear seat belts in this case where death occurred and even defendant's medical witness did not attempt an apportionment. Would the jury be asked for this purpose to consider damages as if plaintiff had not died? This question answers itself.
Significantly, the medical examiner's testimony for the State on the effect of the failure to wear seat belts was inconsistent and speculative; there was even a concession that "even with seat belts on she might have died from other injuries." Ibid.
Barry was decided when the law of this State encompassed the absolute bar of contributory negligence. The automobile collision upon which this civil action is predicated occurred well *391 after the enactment of the New Jersey Comparative Negligence Act, N.J.S.A. 2A:15-5.1 et seq., effective 1973. An essential question, then, is what effect did the adoption of our comparative negligence statute have upon the holding in Barry, the basic principles it established, and the concerns it expressed? The court turns to Wisconsin law for guidance. Having adopted nearly verbatim the Wisconsin comparative negligence statute, statutory construction principles compel reference to the decisional authority of the parent state in placing meaning on the local state's enactment. See, e.g., Van Horn v. Wm. Blanchard Co., 88 N.J. 91, 97 (1981); Warshany v. Supermarkets General, Corp., 161 N.J. Super. 515, 521 (Law Div. 1978); Rawson v. Lohsen, 145 N.J. Super. 71, 77 (Law Div. 1976).
The Supreme Court of Wisconsin analyzed the seat belt defense in the context of its comparative negligence law in Bentzler v. Braun, 34 Wis.2d 362, 149 N.W.2d 626 (1967). Just as in the case before this court, Wisconsin had a statute mandating that cars be equipped with seat belts; there was no statute then in effect requiring that seat belts be used. The court determined that under the Wisconsin legislation, it was not negligence per se to fail to use available seat belts. Id. 149 N.W.2d at 639.[7]
However, the court went on to identify a duty, "based on the common law standard of ordinary care, to use available seat belts independent of any statutory mandate." Ibid. The court concluded:

*392 In those cases where seat belts are available and there is evidence before the jury indicating causal relationship between the injuries sustained and the failure to use seat belts, it is proper and necessary to instruct the jury in that regard. A jury in such case could conclude that an occupant of an automobile is negligent in failing to use seat belts. [Id. at 640.]
The Bentzler opinion mirrors Judge Lynch's opinion in Barry in many respects. The Wisconsin Supreme Court in Bentzler noted that the relevant inquiry was not whether the plaintiff's negligence contributed to the cause of the accident, but whether it contributed to the injuries. Bentzler, 149 N.W.2d at 640. As seen, Barry made the same distinction. The Bentzler court also adopted the same standard of causation in evaluating the effect of the failure to use seat belts, i.e.: Was the conduct a "substantial factor" in producing the resulting injuries? Ibid. Both opinions discussed the necessity of sufficient evidence of causation, and, in both, there was a complete failure of proof in this regard. Id. at 641.
In view of the foregoing similarities, why then, did the Bentzler court distinctly go further than Judge Lynch had in Barry in recognizing the seat belt defense? The divergence probably stems from the reluctance of Judge Lynch to take judicial notice of the proposition that seat belts are desirable and effective as protective devices. Barry, 99 N.J. Super. at 279. In contrast, after reviewing recent publications and statistics concerning the effectiveness of seat belts, the Bentzler court stated 149 N.W.2d at 640:
While it is apparent that these statistics cannot be used to predict the extent or gravity of injuries resulting from particular automobile accidents involving persons using seat belts as compared to those who are not using them, it is obvious that, on the average, persons using seat belts are less likely to sustain injury and, if injured, the injuries are likely to be less serious. On the basis of this experience, and as a matter of common knowledge, an occupant of an automobile either knows or should know of the additional safety factor produced by the use of seat belts. A person riding in a vehicle driven by another is under the duty of exercising such care as an ordinarily prudent person would exercise under similar circumstances to avoid injury to himself. [Footnote omitted.]
This court similarly believes that it is "obvious" and a "matter of common knowledge" that wearing seat belts, on the *393 average, serves to prevent or minimize injuries. In 1983, seat belts were no longer the relatively new safety devices that they had been in 1967 when Barry was decided. A significant change in public sentiment as to the effectiveness of seat belts for driver safety occurred even prior to the passage of the present seat belt law, as manifested in the massive educational campaign urging occupants to "buckle up". As stated by the Supreme Court of Wisconsin in Foley v. City of West Allis, 113 Wis.2d 475, 335 N.W.2d 824, 828 (1983):
The seat-belt defense is this court's recognition that in light of the realities of the frequency of automobile accidents and the extensive injuries they cause, the general availability of seat belts, and the public knowledge that riders and drivers should "buckle up for safety," those who fail to use available seat belts should be held responsible for the incremental harm caused by their failure to wear available seat belts. [Footnotes omitted.]
The Supreme Court of New Jersey in Dziedzic v. St. John's Cleaners & Shirt Launderers, Inc., 53 N.J. at 162, citing Roethe, Seat Belt Negligence in Automobile Acidents, 1967 Wis.L.Rev. 288, also acknowledged the advantages of wearing a seat belt: "It has been said that in most situations it is better to fasten a seat belt than to ignore it." The Roethe article was also cited in Bentzler in support of that court's determination that the benefits of wearing seat belts were "obvious." Id. 149 N.W.2d at 640, n. 35. The article was considered noteworthy for its compilation of convincing statistics demonstrating the effectiveness of seat belts. Ibid. Yet unlike the Bentzler court, the Supreme Court in Dziedzic, 53 N.J. at 162, n. 2, apparently believed that the author's ultimate conclusion was paramount, as it emphasized:
Nevertheless, the author concludes: "The social utility of wearing a seat belt must be established in the mind of the public before failure to use a seat belt can be held to be negligence. Otherwise the court would be imposing a standard of conduct rather than applying a standard accepted by society." Roethe at 296-297.
As discussed, however, this court is convinced that a public consensus as to the utility of seat belts now exists and did exist at the time of Mrs. Dunn's accident.
*394 Sandoz v. Cassise, 212 N.J. Super. 246 (Law Div. 1986), gives implicit recognition to the seat belt defense based on a common law duty. Sandoz centered on the award of arbitrators pursuant to N.J.S.A. 39:6A-24 et seq. and R. 4:21A in an automobile negligence personal injury action. The arbitrators, without articulating a reason, reduced both plaintiffs' awards for their comparative negligence in failing to use available seat belts. The Passenger Automobile Seat Belt Usage Act, N.J.S.A. 39:3-76.2e et seq., was not in force at the time of the accident. Accordingly, a remand was necessary to clarify whether the reduction was erroneously based on a violation of a statute. Alternatively, Judge Haines suggested that "if the supposed statute were not a factor, and `satisfactory evidence' were presented, the arbitrators could have found that the failure to use seat belts contributed to the injuries, justifying a reduction of the award." Id. at 249, citing Barry, 99 N.J. Super. at 274-75. Notably, the concept of judicial notice of the effectiveness of seat belts, formerly an obstacle for the court in 1967, was not even addressed. The utility of the seat belt, as well as the public acceptance of its value, was implicitly recognized. This court is willing to take judicial notice of the efficacy of seat belts.[8]
*395 The court in Bentzler identified a duty to wear seat belts and established the seat belt defense. In its subsequent decision of Foley v. City of West Allis, the court set forth guidelines for applying the defense in a comparative negligence setting. Important to the court's holding was its conceptualization of the automobile accident as involving two incidents: the first incident being the actual collision and the second when the occupant of the vehicle hits the vehicle's interior. Id. 335 N.W.2d at 829. Wearing seat belts has relevance only with respect to the "second collision."
In Foley v. City of West Allis, 335 N.W.2d 824, 829, the court adopted a method of apportioning negligence and damages that it believed properly allocated damages between the two incidents:
[W]e conclude that a fair and administrable procedure, taking into account the public policy underlying the seat-belt defense and the principles of comparative negligence ..., is to calculate a plaintiff's provable damages by the usual rules of negligence without regard to the seat-belt defense and then take into account the seat-belt defense by decreasing the recoverable damages by the percentage of the plaintiff's causal seat-belt negligence. [Footnote omitted.]
The court indicated that this method of apportionment "borrows from" the technique used under the avoidable consequences and mitigation of damages doctrines. These doctrines were not "directly applicable" to the seat belt defense situation since they "generally apply only where plaintiff's conduct occurs after defendant's negligence." Id. at 830. New Jersey law accords with this view. Barry, 99 N.J. Super. at 275.
In explaining the rationale for its approach, the court further stated, "We should seek to treat the plaintiff and defendant in such a way that the plaintiff recovers damages from the defendant for the injuries that the defendant caused, but that the defendant is not held liable for incremental injuries the plaintiff could and should have prevented by wearing an available seat belt." Id. 335 N.W.2d at 830-31.
The following is the procedure recommended by the Wisconsin Supreme Court:

*396 (1) Determine the causal negligence of each party as to the collision of the two cars ...; (2) apply comparative negligence principles to eliminate from liability a defendant whose negligence causing the collision is less than the contributory negligence of a plaintiff causing the collision ...; (3) using the trier of fact's calculation of the damages, reduce the amount of each plaintiff's damages from the liable defendant by the percentage of negligence attributed to the plaintiff for causing the collision...; (4) determine whether the plaintiff's failure to use an available seat belt was negligence and a cause of injury, and if so what percentage of the total negligence causing the injury was due to the failure to wear the seat belt ...; (5) reduce the plaintiff's damages calculated in step (3) by the percentage of negligence attributed to the plaintiff under step (4) for failure to wear an available seat belt for causing the injury. [Id. at 831.]
In contrast, the Court of Appeals of New York in Spier v. Barker, 35 N.Y.2d 444, 363 N.Y.S.2d 916, 920, 323 N.E.2d 164, 167 (1974), adopted the rule that nonuse of an available seat belt may constitute a breach of the plaintiff's duty to mitigate his damages where there is adequate proof that the seat belt would have prevented some of the injuries sustained. The court acknowledged that the doctrines of mitigation and avoidable consequences traditionally apply to post-accident conduct of the plaintiff. However, it noted that an occupant of an automobile can readily protect himself with a seat belt and in this sense, has a unique way of minimizing damages. Id. 363 N.Y.S.2d at 921, 323 N.E.2d at 168. As further support, the court stated, "At this juncture, there can be no doubt whatsoever as to the efficiency of the automobile seat belt in preventing injuries." Ibid. [Footnote omitted.]
The Spier rule remains unaffected by New York's adoption of comparative negligence, CPLR § 1411 et seq. See DiMauro v. Metropolitan Suburban Bus Auth., 105 A.D.2d 236, 483 N.Y.S.2d 383, 393 (1984), indicating that a jury is to separately determine the total amount of the plaintiff's damages and the amount, if any, attributable to the nonuse of the belt, and n. 4 expressing that court's reluctance in following the Spier rule "which effectively imposes 100% liability upon an unbelted plaintiff."
Florida also appears to have recognized the seat belt defense under a mitigation of damages theory. In Insurance Co. of North America v. Pasakarnis, 451 So.2d 447 (1984), the Supreme *397 Court of Florida held that evidence of a plaintiff's failure to wear an available and operational seat belt may be considered by a jury in assessing plaintiff's damages. A defendant has the burden of proving that plaintiff's failure to use the seat belt was unreasonable under the circumstances. If there is competent evidence to prove that nonuse of the belt contributed substantially to producing at least a part of plaintiff's damages, then the jury can consider this factor in deciding whether damages otherwise recoverable should be reduced.[9]
The body of law concerning the seat belt defense is evidently characterized by a diversity of approach. Equally apparent is that the majority of jurisdictions which have considered the issue have rejected the defense and its variations.[10] Some *398 courts have been reluctant to recognize the defense in the absence of a legislative mandate creating a duty to use a seat belt. See, e.g., State v. Ingram, 427 N.E.2d at 448 and Thomas v. Henson, 695 P.2d at 478. Other reasons that have been advanced include: the questions that exist regarding the effectiveness of seat belts, see, e.g., Britton v. Doehring, 286 Ala. 498, 242 So.2d 666, 675 (1970) and D.W. Boutwell Butane v. Smith, 244 So.2d 11, 12 (Miss. 1971); the failure to wear a seat belt does not contribute to the happening of the accident and is therefore not appropriately a basis to bar or diminish recovery, see, e.g., Melesko v. Riley, 339 A.2d at 480; a defendant should not be able to diminish the consequences of his negligence because of a plaintiff's failure to anticipate the defendant's negligence in causing the accident or because of the fortuitous circumstance that plaintiff was riding in a vehicle equipped with seat belts, see, e.g., Amend v. Bell, 570 P.2d at 143; permitting the defense would eventuate in a battle of safety experts and would allow the jury to engage in substantial speculation, Ibid.; and, the defense "does not fit neatly" into traditional tort doctrines such as mitigation of damages or avoidable consequences, see, e.g., Lipscomb v. Diamiani, 226 A.2d at 917 and State v. Ingram, 427 N.E.2d at 448.
This court, however, believes that the seat belt issue is particularly appropriate for judicial development and decision as did the courts in Bentzler, Spier and Pasakarnis. As discussed, recent studies have convincingly demonstrated the *399 effectiveness of seat belts in saving lives and in lessening the severity of injuries. In view of the importance of the seat belt as a safety device, and the wide publicity regarding its value, a member of the motoring public knows or should know of the advantages in wearing one. A front seat occupant of an automobile, then, has a common-law duty to wear an available seat belt.
The "duty" imposed does not refer to an obligation of conduct directed toward another person. Rather, the duty pertains to conduct that involves an unreasonable risk of harm to the actor himself. Cf. Prosser and Keeton, The Law of Torts, § 65 (5th ed. 1984). Nonuse of an available and operable seat belt may amount to unreasonable conduct under the circumstances. In accordance with fundamental and familiar negligence principles, one must exercise the standard of care that a reasonably, prudent person would pursue under similar circumstances in protecting himself from harm. The duty owed is to exercise care for one's own safety, commensurate with the risk of harm. At the very least, it requires that one not expose oneself to a foreseeable and unreasonable risk of injury, particularly when a ready means of protection is available.
The theoretical basis for evaluating an automobile occupant's conduct can be synthesized from the formula articulated by Judge Learned Hand in United States v. Carroll Towing Co., 159 F.2d 169, 173 (2d Cir.1947), reh. den. 160 F.2d 482 (2d Cir.1947). Under this formula, one may be found to have acted unreasonably if the probability of harm multiplied by the gravity of harm is greater than the burden of adequate precautions against that harm or the importance of the interest sought to be advanced. This approach was essentially employed by New York's Court of Appeals in Spier v. Barker, 363 N.Y.S.2d at 921, 323 N.E.2d at 168 and was followed by Florida's highest court in Insurance Co. of North America v. Pasakarnis, 451 So.2d at 453.
*400 The formula, as stated, appears to be profound. However, a jury routinely considers its elements whenever it evaluates, contextually, the amount of care demanded by the standard of reasonable conduct. It can be said that the ordinary, prudent person is on notice of the possibility of an automobile accident. Although the probability of an accident occurring on any given trip is not high, the degree of harm associated with an accident is substantial enough to make the risk of venturing out unprotected great. The burden of adequate precautions, on the other hand, is minimal. While this burden may entail inconvenience, physical effort and aesthetic loss, these consequences seem far less than the risks inherent in automobile travel.
Addressing some of the other arguments frequently advanced in opposition to the seat belt defense, the court adopts the reasoning of the Spier court, which responded to the concern about speculation and a proliferation of experts as follows:
In addition to underestimating the abilities of those trained in the field of accident reconstruction, this argument fails to consider other instances in which the jury is permitted to apportion damages (i.e., as between an original tort-feasor and a physician who negligently treats the original injury). Furthermore, if the defendant is unable to show that the seat belt would have prevented some of the plaintiff's injuries, then the trial court ought not submit the issue to the jury. [Id. 363 N.Y.S.2d at 922, 323 N.E.2d at 169.]
With respect to the objection that a defendant will derive a windfall if plaintiff's vehicle is "perchance" equipped with seat belts, one notes that the installation of seat belts has been mandatory for over 20 years; the concern is therefore inconsequential. Similarly, in light of this court's decision to adopt the seat belt defense based on traditional negligence principles, the concern that the defense cannot, conceptually, encompass the avoidable consequences or mitigation of damages doctrines is irrelevant.
In conclusion, this court finds the decisional authorities cited herein to be persuasive. Seat belts are effective and desirable accoutrements of safe vehicular travel and accordingly, a duty may be judicially imposed respecting their use. To *401 the extent that this duty has not been previously developed as part of the common law of New Jersey, it must be remembered that that which is required of the ordinary, prudent person is not unchanging. The standard is adaptable and should evolve with the times to fairly and realistically reflect technological and societal change. See, generally, Prosser and Keeton, The Law of Torts, supra, § 32 at 173-75. It is for the jury to determine that in failing to wear her seat belt, Mrs. Dunn failed to comply with the standard of conduct of a reasonable, prudent person under similar circumstances. Where, as here, there is competent evidence of a causal relationship between the failure to use a seat belt and the injuries Mrs. Dunn sustained, the "seat belt defense" will be permitted. Moreover, the method of damage apportionment set forth in Foley v. City of West Allis, will be followed as it appropriately distinguishes between the first and second collisions and otherwise comports with the policies embodied in our own comparative negligence statute.[11] The foundation created in Barry v. The Coca Cola Co., is one that this court may build upon.

ADDENDUM
The following jury interrogatories, reflecting step 4 of the approach set forth in Foley v. City of West Allis, supra, 335 N.W.2d at 831, were ultimately used:
1. What amount of money will fairly and reasonably compensate Mary Ellen Dunn for her injuries caused by the accident?
 $ ____
Now answer question No. 2.
2. Was the plaintiff, Mary Ellen Dunn, negligent with respect to her own safety?
 YES ____ NO ____

*402 If you answered "No" to question No. 2, return your verdict now.
If you answered "Yes" to question No. 2, answer question No. 3 next.
3. Was the negligence of Mary Ellen Dunn a proximate cause of any of her injuries?
 YES ____ NO ____
If you answered "No" to question No. 3, return your verdict now.
If you answered "Yes" to question No. 3, answer question No. 4 next.
4. What percentage of causal negligence which produced the injuries to Mary Ellen Dunn do you attribute to:

 Mr. D'Urso ____%
 Mrs. Dunn ____%
 TOTAL 100%

Now return your verdict.
NOTES
[1] Effective March 1, 1985, use of seat belts has been statutorily mandated for persons in the front seat. N.J.S.A. 39:3-76.2f. Since the current Passenger Automobile Seat Belt Usage Act, N.J.S.A. 39:3-76.2e et seq., was not in effect at the time of this accident, there was no issue at trial of plaintiff's breach of a statutory duty to use the restraining devices.
[2] Immediately prior to trial, Gugliemo Durso conceded liability for the happening of the accident. Gerardo Durso, the owner of the automobile, was dismissed as a defendant for lack of proof of vicarious liability on his part. The complaint as against Mr. Dunn was dismissed with the consent of the parties for lack of proof of his negligence.
[3] Although strenuously objecting to the substance of Mr. Rich's proposed testimony, plaintiff was prepared to, and in fact did, present the jury with expert opinion from another witness to rebut the opinion testimony of Mr. Rich.
[4] Although the current seat belt law cannot serve as a basis for decision in the present case, the terms of N.J.S.A. 39:3-76.2h invite comment. The statute provides, "This act shall not be deemed to change existing laws, rules, or procedures pertaining to a trial of a civil action for damages for personal injuries or death sustained in a motor vehicle accident." The court believes that its recognition of the seat belt defense and its chosen method of damage apportionment are well supported by the law as it existed prior to March 1, 1985. The court's holding, then, is consistent with and not barred by the above statute.
[5] In unusual circumstances not here present, where a plaintiff's nonuse of a seat belt is alleged to be a cause of the accident, such conduct may be germane to the issue of plaintiff's liability. See Curry v. Moser, 89 A.D.2d 1, 454 N.Y.S.2d 311 (1982) and Tempe v. Giacco, 37 Conn. Supp. 120, 442 A.2d 947 (1981).
[6] § 465 is headed, "Causal Relation Between Harm and Plaintiff's Negligence" and reads:

(1) The plaintiff's negligence is a legally contributing cause of his harm if, but only if, it is a substantial factor in bringing about his harm and there is no rule restricting his responsibility for it.
(2) The rules which determine the causal relation between the plaintiff's negligent conduct and the harm resulting to him are the same as those determining the causal relation between the defendant's negligent conduct and resulting harm to others.
[7] Since the enactment of N.J.S.A. 39:3-76.2 in 1965, front seat safety belts have been required equipment for certain passenger automobiles sold or operated in this State. This statute, which is similar in terms to the statute evaluated in Bentzler, at 639, has never been construed as requiring occupants to use the belts. See Barry, at 279. In keeping with the approach taken by the majority of jurisdictions that have recognized the seat belt defense, the court finds that Mrs. Dunn's failure to use an available seat belt cannot constitute negligence per se. See Insurance Co. of North America v. Pasakarnis, 451 So.2d 447, 453 (Fla. 1984) and Spier v. Barker, 35 N.Y.2d 444, 363 N.Y.S.2d 916, 920-22, 323 N.E.2d 164, 167-68 (1974).
[8] Otherjurisdictions, in adopting a particular variation of the seat belt defense, have done likewise. See, e.g., New York in Spier v. Barker, 363 N.Y.S.2d at 921-23, 323 N.E.2d at 168-69; Florida in Insurance Co. of North America v. Pasakarnis, 451 So.2d at 453; Ohio in Woods v. City of Columbus, 23 Ohio App.3d 163, 492 N.E.2d 466, 470 (1985); California in Twohig v. Briner, 168 Cal. App.3d 1102, 214 Cal. Rptr. 729, 730-34 (1985); and Pennsylvania in McKee v. Southeast Delco School Dist., 354 Pa.Super. 433, 512 A.2d 28, 29 (1986). Properly worn, seat belts may be the most significant source of automobile crash protection for automobile occupants. See Bowman, "Practical Defense Problems  The Trial Lawyer's View," 53 Marq.L.Rev. 191, 198 (1970); United States Dept. of Transp., Nat'l Highway Safety Admin. Technical Report, Effectiveness and Efficiency of Safety Belt and Child Restraint Usage (1982); and United States Dept. of Transp., Nat'l Highway Traffic Safety Comm'n, The Automobile Safety Belt Fact Book (May 1982 rev.). Seat belts significantly reduce the likelihood of ejection as well as "second collision" injuries. See Spier v. Barker, 363 N.Y.S.2d at 921-23, 323 N.E.2d at 168-69.
[9] A third approach is discernible under Connecticut law. In Remington v. Arndt, 28 Conn.Sup. 289, 259 A.2d 145, 146 (1969), the court determined that there was no blanket common-law duty of a passenger to fasten his seat belt, although "such a duty may arise when there are circumstances which require him to anticipate a collision or other mishap and there is an opportunity for him to fasten the belt." The court suggested that in a case such as that, failure to fasten the belt would be applicable in mitigation of the plaintiff's damages. Ibid. Connecticut's transition to comparative negligence did not alter its view that under ordinary circumstances, failure to fasten an available seat belt may not be considered in mitigation of damages. Melesko v. Riley, 32 Conn.Sup. 89, 339 A.2d 479, 480 (1975). See, also, Wassell v. Hamblin, 196 Conn. 463, 493 A.2d 870 (1985), in which the defendant raised the mitigation theory, yet the Supreme Court of Connecticut declined to establish law on the seat belt defense given the lack of evidence linking the plaintiffs' nonuse of the seat belts to their injuries.
[10] Jurisdictions which have held that a plaintiff's nonuse of a seat belt is inadmissible for the purpose of showing plaintiff's contributory negligence or failure to mitigate damages include Arizona in Nash v. Kamrath, 21 Ariz. App. 530, 521 P.2d 161 (1974); Delaware in Lipscomb v. Diamiani, 226 A.2d 914 (Super. 1967); Illinois in Clarkson v. Wright, 108 Ill.2d 129, 90 Ill.Dec. 950, 483 N.E.2d 268 (1985); Indiana in State v. Ingram, 427 N.E.2d 444 (1981); Kansas in Taplin v. Clark, 6 Kan. App.2d 66, 626 P.2d 1198 (1981) and Fudge v. City of Kansas City, 239 Kan. 369, 720 P.2d 1093 (1986); and New Mexico in Thomas v. Henson, 102 N.M. 326, 695 P.2d 476 (1985). See, generally, Annot., Nonuse of Automobile Seatbelts as Evidence of Comparative Negligence, 95 A.L.R.3d 239 (1979); Annot., Automobile Occupant's Failure to Use Seat Belt as Contributory Negligence, 92 A.L.R.3d 9 (1979); and Annot., Nonuse of Seat Belt as Failure to Mitigate Damages, 80 A.L.R.3d 1033 (1977).

Colorado, Michigan and Washington disallowed the seat belt defense in any of its variations both before and after their adoption of comparative negligence. Compare Fischer v. Moore, 183 Colo. 392, 517 P.2d 458 (1973), Romankewiz v. Black, 16 Mich. App. 119, 167 N.W.2d 606 (1969) and Derheim v. N. Fiorito Co., 80 Wash.2d 161, 492 P.2d 1030 (1972) with Churning v. Staples, 628 P.2d 180 (Colo. App. 1981), Schmitzer v. Misener-Bennett Ford, Inc., 135 Mich. App. 350, 354 N.W.2d 336 (1984) and Amend v. Bell, 89 Wash.2d 124, 570 P.2d 138 (1977).
[11] In this case, where liability for the happening of the accident was conceded, steps 1 through 3 of the approach recommended by the court in Foley v. City of West Allis, 335 N.W.2d at 831, are not applicable. In addition, after the jury determines the percentage of the plaintiff's causal negligence, it is the responsibility of the trial judge to effect reduction of the plaintiff's damages by molding the verdict.