## ORIE PIERCE v. FOLEY BROS., INC.

168 N. W. (2d) 346.

May 16, 1969—No. 41165.

*Albert A. Woodward* and *Maun, Hazel, Green, Hayes, Simon & Aretz,* for appellant.

*R. William Reilly* and *Stacker, Silverstein, Burke & Radsom,* for respondent.

NELSON, JUSTICE.

Appeal from an order of the District Court of Ramsey County dated September 12, 1967, as amended October 9, 1967, denying the motion of defendant-appellant for summary judgment and certifying a particular question as important and doubtful pursuant to Minn. St. 605.09 (i).

About June 28, 1962, and for some time prior to that date, defendant, Foley Bros., Inc., engaged in the general pipeline business in the State of Montana in a partnership or joint venture with the Shamrock Construction Company under the business name of Foley-Shamrock Construction Company, maintaining offices in that state. In connection with the performance of various construction contracts in Montana, Foley-Shamrock hired as an employee plaintiff, Orie Pierce, allegedly at his home in Hayworth, Oklahoma. Plaintiff entered into his duties pursuant to an employment contract resulting from said hiring. Plaintiff suffered accidental

personal injuries on May 28 and June 27, 1962, arising out of and in the course of his employment in Montana.

Plaintiff returned to Oklahoma where he sought workmen's compensation. On September 4, 1963, he recovered an award against Foley-Shamrock in the State Industrial Court of Oklahoma. No part of the award has been paid, and it was reduced to judgment on September 15, 1965.

Plaintiff brought this action to enforce the judgment, which was entered for $19,824.69; to recover $304.54, representing an amount which defendant was ordered to pay to the Special Indemnity Fund of the State Industrial Court of Oklahoma, said amounts totaling $20,129.23; and to recover his costs and disbursements.

Defendant denies plaintiff's claim, admitting only that on or about the dates alleged it was engaged, in conjunction with the Shamrock Construction Company as a joint venture partnership, in the performance of a construction contract in the State of Montana and that said partnership maintained offices in Montana, and specifically denying that the partnership or defendant maintained any offices or business location in the State of Oklahoma and that plaintiff was hired at offices maintained by defendant in Oklahoma.

Defendant alleges that plaintiff was hired in the State of Montana under a Montana contract of hire and that all duties of plaintiff's employment were performed in Montana and not otherwise. Defendant further alleges that the purported workmen's compensation award by the State Industrial Court of Oklahoma was wholly invalid, void, and of no force or effect *for lack of jurisdiction* by the State Industrial Court over the subject matter of the claim and the person of the named defendant. In general, defendant denies plaintiff's right to recover on the Oklahoma judgment.

The record before us on this appeal contains testimony taken before Judge J. Clark Russell of the State Industrial Court on June 12, 1963, the witnesses being plaintiff and his son, Charlie H. Pierce, who was employed by Foley-Shamrock Construction Company and through whom the hiring of plaintiff took place. There was no cross-examination since defendant chose not to attend, even though it had notice of the hearing.

After filing its answer to the complaint herein, defendant moved the Ramsey County District Court pursuant to Rule 56, Rules of Civil Proce-

dure, for summary judgment on the ground that all the files, records, and proceedings, together with affidavits and the record from the State Industrial Court of Oklahoma, tended to establish that there was no genuine issue as to any material fact and therefore, as a matter of law, defendant was entitled to judgment. That motion was denied and the issues to be litigated were narrowed and set forth in an order and memorandum by the Honorable Leonard J. Keyes dated September 12, 1967. In support of the order denying the motion, the memorandum sets forth certain material facts over which Judge Keyes felt genuine issues exist. Among those facts are (1) whether the telephone conversation with plaintiff in Oklahoma resulted in an employment contract in Oklahoma; (2) whether Charlie H. Pierce had authority to enter into such a contract; (3) whether such a contract, if found to exist, was sufficient contact with Oklahoma to create in personam jurisdiction over defendant in that state; (4) whether proper notice of the Oklahoma hearing was given to defendant; and (5) whether there was a deficiency of evidence at that hearing.

In the memorandum Judge Keyes stated:

"Plaintiff claims that, since Oklahoma had jurisdiction *ab initio* over Defendant, the judgment is, as a matter of law, entitled to full faith and credit in Minnesota. Defendant, on the contrary, claims it is void as a matter of law. If no genuine issues as to material fact were present, summary judgment would necessarily be awarded. However, I believe genuine issue does arise as to certain material facts; hence, the sought relief must be denied at the Rule 56 stage.

\* \* \* \* \*

"Plaintiff's substantive data assert that he entered into a contract of employment in Oklahoma with Defendant, through its actually or apparently authorized agent, Charles H. Pierce; and that subsequently and pursuant to this contract, Plaintiff went to Montana and commenced performance.

"Defendant denies that a contract of employment was effected in Oklahoma, but asserts that its factual data lead to the conclusions that Charles H. Pierce had no authority, actual nor apparent, to hire Plaintiff in Oklahoma and that, in fact, Plaintiff was hired in Montana.

"Defendant claims, however, that even if Plaintiff entered into a con-

tract of employment with it in Oklahoma, such did not constitute the minimal contact required to create an *in personam* submission to Oklahoma for problems arising out of such contract. Defendant concedes that summary judgment is unavailable if its position is found untenable, since genuine factual issues become material."

The trial court, after review of the authorities, further said:

"* * * I am of the opinion that Plaintiff's Oklahoma judgment is entitled to full faith and credit in Minnesota if he can satisfy the fact trier that he and Defendant entered into an employment contract in the State of Oklahoma. Such establishment would require proof of facts sufficient to show authority in Charles H. Pierce, contract consummation in Oklahoma, and or subsequent ratification in Montana. Presently, however, these facts are genuinely disputed and cannot be resolved at this procedural stage.

\* \* \* \* \*

"I fail to see how a defaulting party can complain of evidentiary deficiencies occurring at a default hearing. Cross-examination opportunity was waived for what appeared to be a more appropriate avenue, another calculated risk which a non-resident must assume when he decides to stay out of a forum on a jurisdictional basis.

\* \* \* \* \*

"The most significant ruling is that Defendant's contact in Oklahoma may have been sufficient to render Defendant personally amenable to Oklahoma jurisdiction in a matter arising from such contact. The other contentions of Defendant, I feel, constituted collateral—rather than direct—attacks on the foreign judgment.

"Hence, the trial of this matter should be limited to the ascertainment of whether or not a contract of employment was entered into between Plaintiff and Defendant in the State of Oklahoma. If so, Plaintiff's damages should be a matter of stipulation; if not, Defendant's costs can be readily computed. Rule 56.04, M. R. C. P.

"Certification of the jurisdictional question as important and doubtful might be appropriate here, were it not for the factual dispute on material matters. *See*: *House* vs. *Hanson,* 72 NW 2d 874 (Minn., 1955)."

Later, the trial court amended the order of September 12, 1967, by a supplemental memorandum dated October 9, 1967, and made a part of the order of September 12. The trial court in its supplemental memorandum states:

"Counsel for Defendant has persuaded me that the last sentence of said Memorandum may well be in error and that important and doubtful questions may be certified under Section 605.09 (i), M. S. A., even though fact issues exist as to the question itself. As a consequence, the last paragraph of said Memorandum is hereby deleted and the following is substituted in lieu and in place thereof:

" 'Pursuant to Section 605.09 (i) * * * I hereby certify that the following question presented is important and doubtful: Where the only contact an employer had with the State of Oklahoma was in entering into an employment contract there with an Oklahoma resident, did such contact, *per se*, render the employer subject to personal jurisdiction in Oklahoma relative to an industrial accident subsequently occurring in Montana while said employment contract was still in effect?' The trial court ruled in the affirmative."

This certified question is properly on appeal before this court pursuant to § 605.09 (i) and Rule 103.03, Rules of Civil Appellate Procedure. Under Rule 103.03 (i) an appeal may be taken to the supreme court:

"If the trial court certifies that the question presented is important and doubtful, from an order which denies a motion to dismiss for failure to state a claim upon which relief can be granted or from an order which denies a motion for summary judgment."

■ Plaintiff contends that the question certified by the trial court is the only matter properly before this court on appeal notwithstanding the portions of defendant's brief relating to whether a contract had been entered into in Oklahoma and the alleged insufficiencies of the evidence before the Oklahoma court. Pointing out that interlocutory orders such as a denial of summary judgment are generally nonappealable, Settem v. Etter, 236 Minn. 514, 53 N. W. (2d) 467; Annotation, 103 A. L. R. 1104, plaintiff contends that it is only when a certain question or questions are certified as important and doubtful by the trial court that interlocutory orders become

appealable, and that if a question is so certified, it is the only question of those involved in the motion and order which is before this court on review. He argues that if this were not the case, there would be no need to require certification of a question as important and that it would be enough merely to require certification of the order denying the motion as one involving important and doubtful questions.

Defendant, however, contends that Rule 103.03(i) allows appeal from the entire order and the requirement of certification as important and doubtful goes to the general question of whether the order denying the motion should be sustained. In support of this position, it cites Marquette Trust Co. v. Doyle, 176 Minn. 529, 224 N. W. 149, as controlling. The appeal in the Marquette Trust Company case was taken pursuant to G. S. 1923, § 9498, from an order denying a demurrer. The relevant provision in that statute was in part as follows:

"Provided further that when upon the entry of an order overruling a demurrer, the trial court shall certify that the question presented by the demurrer is in his opinion important and doubtful, and such certification is made part of the order overruling the demurrer, an appeal from such order may be taken."

In his order denying the demurrer in the Marquette Trust Company case, the trial judge, the Honorable Gunnar Nordbye, certified that in his opinion important and doubtful questions were presented by the following grounds of demurrer: (1) There is a defect of parties defendant; (2) several parties of action are improperly united; and (3) the facts stated do not constitute a cause of action.

The motion for demurrer in that case included the ground that another action was pending in the same court. On appeal the respondent argued that this point was "not well taken," since it was not certified specifically by Judge Nordbye as important and doubtful. The judge had explained that he did not certify the question as important and doubtful because when the certified questions were decided that particular point would become moot.

The supreme court addressed itself to the pending of the other action and held that fact not to be available as a ground for demurrer when it did

not appear on the face of the complaint. In answering respondent's argument that the point was "not well taken," the court, speaking through Mr. Chief Justice Wilson, stated (176 Minn. 537, 224 N. W. 152):

"It has been suggested that the question last above considered is not here because it was not the intention of the court to certify that particular question to this court pursuant to G. S. 1923, § 9498(4). But the question which the statute authorizes to be certified is whether the demurrer is to be sustained. The certification in this case is to be so construed. The trial court is not to certify a question as to the sufficiency or insufficiency of a particular reason for or against a demurrer. The statutory certification relates to the merits of the demurrer, and all incidental questions for or against it are before us and are necessarily involved in reaching a conclusion whether the demurrer is to be sustained or overruled."

That the trial court's certification goes to the entire order denying a demurrer and not just the stated questions was accepted as the law in Minnesota and apparently was not tested following the Marquette Trust Company case. See, Cunningham, *Appealable Orders in Minnesota,* 37 Minn. L. Rev. 309, 339. Marquette Trust Co. v. Doyle, *supra,* has not, however, been cited as authority for this principle to any significant degree. Since the adoption of the Rules of Civil Procedure in the early 1950's, demurrers are no longer available. A defendant must now move for judgment on the pleadings for failure to state a cause of action pursuant to Rule 12, or for summary judgment pursuant to Rule 56.

Whether the rule that certification brings an entire order under review should be applied to orders denying summary judgment under our Rules of Civil Appellate Procedure is a crucial issue in this case. Should the appellant be limited to the certified question on interlocutory appeal or be allowed to appeal the entire order? Similarly, is this court limited to review of only that certified issue, or is it free to consider the entire order?

Following the adoption of the Rules of Civil Procedure, the first appeal from an order denying summary judgment and certifying the question involved as important and doubtful was House v. Hanson, 245 Minn. 466, 72 N. W. (2d) 874 (1955). That case involved the question of whether a tort was a compulsory counterclaim under Rule 13.01, Rules of Civil

Procedure. The trial court denied the motion for summary judgment and certified the question involving Rule 13 as important and doubtful. The supreme court held that the order denying summary judgment was appealable under Minn. St. 1961, § 609.05(4). The certified question was, however, the only question presented by the motion for summary judgment.

Similarly, the cases subsequent to House v. Hanson, *supra*, involving an appeal from an order denying a motion for summary judgment and certifying the question presented as important and doubtful have involved only one question or a general statement certifying all questions raised by the motion for summary judgment as important and doubtful. See, for example, Rowan v. K. W. McKee, Inc. 262 Minn. 366, 114 N. W. (2d) 692; Hill v. Stokely-Van Camp, Inc. 260 Minn. 315, 109 N. W. (2d) 749; Shumway v. Nelson, 259 Minn. 319, 107 N. W. (2d) 531; Stevens v. Lycan & Co. 259 Minn. 106, 105 N. W. (2d) 889.

The present appeal is the first time under the Rules of Civil Appellate Procedure that an order denying a motion for summary judgment has been appealed which certifies one of several questions as important and doubtful. Defendant contends now that this court may nevertheless review any and all issues presented; that is, that the question to be reviewed is the general question of whether the denial of summary judgment is to be sustained. We cannot agree. The main purpose for denying appeals from interlocutory orders is to expedite trial proceedings. If certifying one question as important and doubtful entitles appellant to review of the entire motion, that purpose may be defeated. Also, trial courts may be more hesitant to certify an issue as important and doubtful if it will remove their discretion in ruling on motions for summary judgment or judgment on the pleadings.

█ The statutory basis of the case at bar is Okla. Stat. Ann. Title 85, § 4, which provides in part:

"From and after the passage and effective date of this Act, all the provisions of the Workmen's Compensation Law of this State (Title 85 O. S. 1951) and all amendments thereof or thereto shall apply to employers and to employees, irrespective of where accident resulting in injury may occur, whether within or without the territorial limits of the State of Oklahoma,

when the contract or employment was entered into within the State of Oklahoma, and the said employee was acting in the course of such employment and performing work outside the territorial limits of this State under direction of such employer."

In Alaska Packers Assn. v. Industrial Acc. Comm. 294 U. S. 532, 55 S. Ct. 518, 79 L. ed. 1044, an employee was injured in Alaska while performing work pursuant to a contract of employment entered into in the State of California. The employer's business was located in California but the injured employee was a nonresident of said state. The contract provided that the Alaska Workmen's Compensation Act was to apply in the event of injury to the employee. After the employee was injured, he returned to California and received an award under the California Workmen's Compensation Act. The appellant therein challenged the validity of the application of the California statutes under both the due process and full faith and credit clauses of the United States Constitution. California had denied the validity of the employment contract provision reciting that the parties had agreed to be bound by the Alaska Workmen's Compensation Act and further was attempting to compensate the injured nonresident employee for injuries he had suffered out of state. The due process challenge was directly to these latter two points. The appellant further argued that the Alaska Workmen's Compensation Act had provided an exclusive remedy for the injured employee and that by refusing to recognize said remedy as a defense the California court was denying full faith and credit to the Alaska Workmen's Compensation Act. The United States Supreme Court held that the assumption of jurisdiction by, and the award of, the State of California did not infringe the due process and full faith and credit clauses of the Federal Constitution. The Alaska Packers case has come to be looked upon as a landmark decision on certain jurisdictional questions. The language used by the United States Supreme Court is quite relevant to the jurisdictional issue before this court in the case at bar and controls its decision. The Supreme Court stated in the Alaska Packers case (294 U. S. 540, 55 S. Ct. 520, 79 L. ed. 1048):

"The due process clause denies to a state any power to restrict or control the obligation of contracts executed and to be performed without the

state, as an attempt to exercise power over a subject matter not within its constitutional jurisdiction. * * *

"But where the contract is entered into within the state, even though it is to be performed elsewhere, its terms, its obligation and its sanctions are subject, in some measure, to the legislative control of the state. The fact that the contract is to be performed elsewhere does not of itself put these incidents beyond reach of the power which a state may constitutionally exercise. [Citations omitted.]

"* * * The California court has declared: 'The contract creates a relationship under the sanction of the law and the same law attaches as an incident thereto an obligation to compensate for injuries sustained abroad amounting to a sort of compulsory insurance.' * * * Obviously the power of a state to effect legal consquences is not limited to occurrences within the state if it has control over the status which gives rise to those consequences."

We conclude that the assumption of jurisdiction by, and the award of, the State of Oklahoma did not infringe the due process and full faith and credit clauses of the Constitution.

■ Analysis of the facts and holding in the Alaska Packers case clearly demonstrates that the greatest concern and emphasis of the United States Supreme Court related to the situs of the employment contract and the protection of the contracting employee. The situs of the contract was the State of California and the employee was a nonresident Mexican citizen. Taking these two factors as of foremost importance, the court established what is today considered to be the "center of gravity" or the "legitimate interest" rule, concluding (294 U. S. 542, 55 S. Ct. 522, 79 L. ed. 1049):

"California, therefore, had a legitimate public interest in controlling and regulating this employer-employee relationship in such fashion as to impose a liability upon the employer for an injury suffered by the employee, and in providing a remedy available to him in California. In the special circumstances disclosed, the state had as great an interest in affording adequate protection to this class of its population as to employees injured within the state. Indulging the presumption of constitutionality which attaches to every state statute, we cannot say that this one, as ap-

plied, lacks a rational basis or involved any arbitrary or unreasonable exercise of state power."

That reasoning is equally applicable to Oklahoma's interest in controlling the employer-employee relationship here.

Comparison of the Oklahoma statute conferring extraterritorial jurisdiction upon the State Industrial Court of Oklahoma and the California statute conferring extraterritorial jurisdiction upon the Industrial Accident Commission of the State of California is instructive. We have called attention to the relevant portion of the Oklahoma statute. The relevant portion of the California statute currently provides as follows (Labor Code of California, § 5305):

"The * * * Division of Industrial Accidents, including the administrative director and the appeals board has jurisdiction over all controversies arising out of injuries suffered without the territorial limits of this state in those cases where the injured employee is a resident of this state at the time of the injury and the contract of hire was made in this state."

A reading of the two statutes demonstrates a similarity on two basic points, namely, that in order for either state to assert extraterritorial jurisdiction where an employee has been injured outside the territorial limits of either state, the contract of hire or employment must have been entered into within the state in question, and that there is no requirement whatsoever that an employer entering into such a contract have any contacts within the state asserting jurisdiction. The basic requirement is the location of the employment contract. Numerous states have today adopted almost identical statutes.

In the recent case of Houle v. Stearns-Rogers Mfg. Co. 279 Minn. 345, 157 N. W. (2d) 362, this court sustained a decision of the Industrial Commission awarding workmen's compensation to a Minnesota workman for injuries he sustained in the State of South Dakota while employed there pursuant to a contract with a Colorado employer. The issue presented in the Houle case was whether under the facts related therein there was a sufficient governmental interest in the employment status to warrant the Minnesota Industrial Commission in taking jurisdiction to determine compensability of the injuries sustained in South Dakota. Of interest herein is

the statement by this court that the full faith and credit clause of the Constitution has sufficient flexibility to permit an injured employee to secure workmen's compensation benefits in one of several forums including the state in which the injury occurred, the state where the employment relation exists by reason of localization of the employer's business, and the state where the contract of employment was made, since any of these states has a legitimate governmental interest in the work injury to justify application of its own law.

Other cases of interest involving issues related to those in the case at bar are Crider v. Zurich Ins. Co. 380 U. S. 39, 85 S. Ct. 769, 13 L. ed. (2d) 641; Cardillo v. Liberty Mutual Ins. Co. 330 U. S. 469, 67 S. Ct. 801, 91 L. ed. 1028; Industrial Comm. v. McCartin, 330 U. S. 622, 67 S. Ct. 886, 91 L. ed. 1140; and Pacific Employers Ins. Co. v. Industrial Acc. Comm. 306 U. S. 493, 59 S. Ct. 629, 83 L. ed. 940.

Assuming the making of the employment contract in Oklahoma, the cases cited herein establish that the State of Oklahoma had an unrebuttable legitimate interest in its assertion of jurisdiction in the case at bar. Based upon the record before us, the certified question must be answered in favor of plaintiff-respondent, thereby affirming the court below both in its denial of defendant's motion for summary judgment and its ruling in the affirmative on said certified question.

■ Since it has been determined that the State of Oklahoma properly asserted in personam jurisdiction over defendant if the employment contract was made there, the only issue of significance in further proceedings will be whether at the time of his injury in Montana plaintiff was working there pursuant to an employment contract made in Oklahoma. That plaintiff was and is an Oklahoma resident appears to be unquestioned. The testimony taken in the Oklahoma State Industrial Court proceeding, wherein defendant was in default, would indicate that defendant's foreman had authority to hire plaintiff; that the foreman offered plaintiff a job in a telephone call from Browning, Montana, to Hayworth, Oklahoma; that the offer of defendant's foreman specified the duties to be performed by plaintiff, the rate of pay plaintiff was to receive, the date plaintiff was to report, and the location where plaintiff was to report; that plaintiff accepted the offer of defendant's foreman by telephone and knew he had the job prior

to leaving Oklahoma; that plaintiff left his home in Oklahoma, reported to the job site in Browning, Montana, and began performing his duties; and that plaintiff paid his own expenses in traveling and reporting to the job site in Montana.

In General Elec. Co. v. Folsom (Okla.) 332 P. (2d) 950, 952, the Oklahoma court held that the general rule is that a contract is deemed to be made at the place where the final assent is given. In the Folsom case a resident of Oklahoma received a written offer of employment with an application blank from a firm in New York. The New York firm did not have any contact with the State of Oklahoma in the sense that it had any business location in Oklahoma. The Oklahoma resident, however, filled out the application blank which, according to the employer's instructions, constituted an acceptance of the offer of employment. The Oklahoma resident was injured in the State of New Mexico while in the employ of the New York firm and proceeded with his workmen's compensation claim in Oklahoma upon the theory that the contract was entered into in the State of Oklahoma, thereby calling into play the Oklahoma statute present in the case at bar.

The New York firm challenged the jurisdiction of the Oklahoma State Industrial Court, arguing that no contract was ever entered into in the State of Oklahoma. On the question of where the contract of employment was entered into and localized, the Oklahoma court took the position that the contract was localized in the State of Oklahoma, since the acceptance had been given in that state. It might be interesting to note that the resident in the Folsom case also had to pass a physical examination given in Indiana as a condition to his employment and that all of said resident's prospective work was to be performed entirely outside of the State of Oklahoma.

On the question of the jurisdiction of the State Industrial Court to hear the claim of the employee-resident, the Oklahoma Supreme Court held that since the contract of employment came into being in Oklahoma the State Industrial Court had jurisdiction over the compensation proceeding.

In Scotty's Flying & Dusting Service, Inc. v. Neeser (Okla.) 393 P. (2d) 842, the jurisdiction of the State Industrial Court was again challenged on the ground that the contract of employment was not entered into

in the State of Oklahoma. The brother of the president of appellant, while working for appellant, informed appellant that he had heard the deceased employee, a resident of Arizona, was a good pilot. Appellant, through the brother of its president, called the deceased and told him to come out to Oklahoma from Washington, guaranteeing him $300 to cover his expenses whether or not he went to work for appellant. The deceased eventually arrived in Oklahoma and went to work for appellant and was killed while flying for appellant in Texas. The court held that the contract of employment had been entered into in Oklahoma and not in the State of Washington, stressing the fact that appellant did not unconditionally offer the deceased employment in the telephone conversation. Had the facts of the case at bar been present in the Neeser case, it seems clear that the Oklahoma court would have found the contract to have been accepted by telephone in the State of Washington, thereby establishing the contract there.

Defendant herein has cited several cases which it believes establish that no contract was entered into in the State of Oklahoma between plaintiff and defendant: Armstrong v. Guy H. James Const. Co. (Okla.) 402 P. (2d) 275; Sims v. United Bridge and Iron (Okla.) 402 P. (2d) 911; and Pease Brothers, Inc. v. Evans (10 Cir.) 382 F. (2d) 71. In reviewing these cases, we find them to be distinguishable, and we reach the conclusion that had the facts of the case at bar been present in these cases, they would have held that a contract was entered into in the State of Oklahoma. It was made clear in these cases that, ordinarily, to constitute an acceptance of an offer there must be an expression of the intention by word, sign, writing, or act communicated or delivered to the person making the offer or his agent. These cases indicate that the controlling question is not whether a party accepted the offer but where he accepted it and that it is agreed that a contract is deemed to have been made where the final assent is given.

So the question that must be answered in the case at bar is, where was the acceptance or assent finally given? Was it in Oklahoma or was it in Montana? If the acceptance was finally given in the State of Oklahoma, then the employment contract was an Oklahoma contract. We think the rule recently adopted by the California Supreme Court in a similar fact sit-

uation is sound and should be employed in the case at bar. That decision, Travelers Ins. Co. v. Workmen's Comp. Appeals Bd. 68 Cal. (2d) 7, 64 Cal. Rptr. 440, 434 P. (2d) 992, would appear to be crucial and determinative of the case at bar. In defining one of the issues before it, the California Supreme Court stated (68 Cal. [2d] 11, 64 Cal. Rptr. 442, 434 P. [2d] 994):

"* * * The only issue here turns on whether, within the meaning of sections 5305 and 3600.5 of the Labor Code, applicant, at the time of his injuries in Utah, was working pursuant to an employment contract made in California."

The court further stated (68 Cal. [2d] 14, 64 Cal. Rptr. 444, 434 P. [2d] 996):

"California has adopted the rule that an oral contract consummated over the telephone is deemed made where the offeree utters the words of acceptance."

Affirmed and remanded to the court below for further proceedings.