224 N.J. Super. 130 (1988)
539 A.2d 1244
FRANCES SIREN, SUBSTITUTE EXECUTRIX OF THE ESTATE OF RICHARD L. SIREN, DECEASED, PLAINTIFF-APPELLANT,
v.
JOSEPH BEHAN, VOLKSWAGEN-WERK AKTIENGESELLSCHAFT, A.G., VOLKSWAGEN OF AMERICA, INC., WORLD WIDE VOLKSWAGEN, INC., PIKE VOLKSWAGEN, INC., STATE OF NEW JERSEY, TOWNSHIP OF GLOUCESTER, TOWNSHIP OF WINSLOW, COUNTY OF CAMDEN AND JAMES P. BEHAN, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted February 17, 1988.
Decided March 24, 1988.
*132 Before Judges MICHELS, SHEBELL and GAYNOR.
Molotsky, Rabkin & Schwartz, attorneys for appellant (Ira Rabkin, on the brief).
Hanlon, McHeffey, Herzfeld & Rubin, attorneys for respondents Volkswagen of America, Inc., Volkswagen Aktiengesellschaft, A.G., World Wide Volkswagen and Pike Volkswagen (Robert M. Hanlon, of counsel; Lawrence N. Lavigne, on the brief).
No briefs were filed on behalf of the other respondents.
The opinion of the court was delivered by SHEBELL, J.A.D.
Plaintiff, Frances Siren, Substitute Executrix of the Estate of Richard L. Siren, deceased, appeals from a judgment of no cause for action entered on a jury finding that neither the automobile nor the door latch system manufactured, distributed and sold by the Volkswagen-defendants was defective and that neither defect was the proximate cause of plaintiff's husband's death.
*133 In February 1980, plaintiff and her husband, Dr. Richard L. Siren, purchased a new 1980, four door, Volkswagen Dasher station wagon from a Volkswagen dealership. The vehicle performed well and the Sirens had experienced no mechanical problems with the driver's door.
On January 23, 1981, at about 5:30 p.m., the Sirens and their infant daughter left the home of plaintiff's mother, where they had been visiting, and entered the vehicle. Dr. Siren drove and his wife sat in the front passenger's seat holding her daughter; none wore the seat belts which were available in the vehicle. Earlier that day, Dr. Siren had worn a seat belt at his wife's insistence, but on this occasion, as was his usual practice, he did not use the seat belt. The Sirens drove north on County Route 689 (Berlin-Cross Keys Road) toward the point where it intersected with County Route 706 (Erial-Cross Keys Road). Stop signs controlled the intersection preventing traffic on Route 706 from flowing unimpeded onto Route 689. There were no stop signs controlling the flow of traffic along Route 689.
Meanwhile, a vehicle which had been travelling west on Route 706 stopped at the stop sign when it arrived at the intersection. The driver looked to his left on Route 689 and saw the Sirens' Volkswagen approaching at about 45 to 50 miles per hour. Across Route 689 he also saw a Ford approaching him travelling east on Route 706 at about 45 to 50 miles per hour. The Ford did not brake or slow down for the stop sign that was facing it. It entered the intersection at the same time as the Sirens' Volkswagen and collided with the left side of the Volkswagen, striking the area near the driver's door handle. The Ford spun around and came to rest after striking the third vehicle which was still stopped on the opposite side of Route 689. The Volkswagen was turned around by the force of the collision and came to rest in a field about 90 feet from the point of impact. The right rear wheel of the Volkswagen was torn off. Neither plaintiff nor her daughter was hurt, nor were the drivers of the other two cars. The driver's door of the Volkswagen came open and Dr. Siren was found about ten feet *134 behind the Volkswagen. He died before being taken from the accident scene.
Plaintiff proceeded to trial against Volkswagen after settling with all other defendants. Plaintiff contended that Dr. Siren's death was proximately caused by a defectively designed door latch which had opened during the course of a "moderate," foreseeable traffic accident, permitting Dr. Siren to be ejected from the vehicle. Following an adverse jury verdict, plaintiff's motion for a new trial was denied.
Plaintiff argues that "[t]he jury verdict, as announced, clearly demonstrated a fatal confusion in the minds of the jurors and requires the granting of a new trial." This argument is directed toward the jury's negative answers to all four questions on the verdict form. Questions 1(a) and 2(a), respectively, asked whether the jury found Volkswagen's automobile or door latch to be defective. Questions 1(b) and 2(b) respectively asked whether the defect in the automobile or the door latch was the proximate cause of Dr. Siren's death.
Plaintiff views the negative answers on the proximate cause issues as irreconcilable with the negative answers on the defect issues, because if the jurors found no defect in either the automobile or door latch, it was unnecessary for them to deal with the proximate cause issues. Because the jurors answered the proximate cause questions, plaintiff contends that they must have believed that some defect was present in both the automobile and the door latch.
We read nothing more into the jury's actions than that by answering both the "defect" and "proximate cause" questions the jury was obeying the instructions given to it by the trial judge. In the two-part jury question number 1, the judge focused the jury's attention on defects and proximate causation involving the whole vehicle. The judge told the jury to answer both 1(a) and 1(b), and, if they answered either part in the negative, to answer both questions 2(a) and 2(b), which focused on defects and proximate causation involving only the door *135 latch. The jury answered both 1(a) and 1(b) in the negative and therefore, pursuant to the judge's instructions, went on to answer 2(a) and 2(b).
To our view, the jury findings do not indicate that the jury might have found that plaintiff prevailed on any issue. The answers clearly indicate that the jury concluded there were no defects and, even if there were, those defects were not the proximate cause of Dr. Siren's death.
In Brendel v. Public Service Elec. and Gas Co., 28 N.J. Super. 500 (App.Div. 1953), we stated:
It is, of course, well settled that inconsistent and irreconcilable verdicts are fatally defective and should normally be set aside. The grounds customarily assigned as the reason therefor is that the jury failed to comprehend the issues involved in the trial and, by their verdicts, demonstrated their unfitness to determine the rights and obligations of the respective parties. [Id. at 507].
Here, however, we do not find the verdict to be inconsistent or irreconcilable. There is no indication that the jurors did not comprehend the issues involved or that they were confused about the answers they provided.
Plaintiff also contends that it was reversible error for the trial judge to reconsider and reverse the prior interlocutory order of a motion judge who barred trial evidence pertaining to non-use of the seat belts. This argument has no merit.
The inherent power of a court to modify its interlocutory orders prior to the entry of final judgment is well settled in New Jersey. In Lyle v. Staten Island Terra-Cotta Lumber Co., 62 N.J. Eq. 797, 805 (E. & A. 1901), the Court recognized that a lower court had the power "to correct, pendente lite, an obvious fallacy in one of its own orders." Expanding this power, the Court in Fidelity Union Trust Co. v. Petchensky, 119 N.J. Eq. 514 (Ch. 1936), favorably quoted federal case law which stated:
"Nor do we have any doubt of the power of the court, while a case and the parties are before it, upon proper hearing to reconsider, modify and enlarge its previous orders in respect to a pending controversy. Such power and such authority is so familiar and so well understood that we see no occasion for *136 citing authorities in support of it." Calaf v. Fernandez (C.C.A.), 239 Fed.Rep. 795 [1st Cir. 1917]. [Id. at 516].
Moreover, the power was commented upon and supported in Falcon B. & L. Assn. v. Schwartz, 121 N.J. Eq. 27, 31 (Ch. 1936).
The issue of the trial court's power to modify its interlocutory orders was addressed in Ford v. Weisman, 188 N.J. Super. 614 (App.Div. 1983), wherein we stated:
Therefore, we hold that the principle of finality of judgments does not prevent a trial court from granting relief from its interlocutory orders upon a change in the governing law before litigation ends. During this time, the trial court has complete power over its interlocutory orders and may revise them when it would be consonant with the interests of justice to do so. See John Simmons Co. v. Grier Brothers Co., 258 U.S. 82, 42 S.Ct. 196, 66 L.Ed. 475 (1922); 7 Moore, Federal Practice, ¶ 60.16[4], at 87-88. See also, Scheck v. Houdaille Constr. Materials, Inc., 121 N.J. Super. 335, 343-345 (Law Div. 1972). A contrary rule would wreak havoc in our appellate courts, because it would require that every litigant seek leave to appeal from every interlocutory order, to protect himself should the applicable law change before the end of litigation. [Id. at 619; emphasis supplied].
Again, in Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250 (App.Div. 1987), we stated:
We hold that the trial court has the inherent power, to be exercised in its sound discretion, to review, revise, reconsider and modify its interlocutory orders at any time prior to the entry of final judgment. [Id. at 257].
Plaintiff, of course, urges that the trial court erred in admitting evidence of the failure of Dr. Siren to use his seat belt, particularly since the defense conceded that the failure to use his seat belt could not constitute contributory negligence. Plaintiff asserts that Dr. Siren had no statutory or common law duty to wear a seat belt, and therefore, his failure to use the seat belt should not have been submitted to the jury to determine whether there was a design defect in his vehicle. As part of this argument, plaintiff further contends that the trial court erred in allowing the jury to evaluate the design defect claim in terms of the vehicle as a whole rather than focusing only on the door latch assembly.
Plaintiff is correct when she states that Dr. Siren had no statutory duty to wear a seat belt at the time of the accident in *137 January 1981. The use of seat belts by persons in the front seat of a vehicle did not become statutorily mandated until March 1, 1985. N.J.S.A. 39:3-76.2e et seq. Additionally, no common law duty was recognized in reported case law until recently, when the Law Division first upheld the "seat belt defense" in a negligence action. Dunn v. Durso, 219 N.J. Super. 383, 400-01 (Law Div. 1986). This accident occurred before any declared duty to wear a seat restraint existed. Further, no issue was raised regarding the failure to wear a seat belt as mitigating damages. We need not decide whether on retrial defendant may now raise the issue of whether failure to wear a seat belt is material on the issue of mitigation of damages. See Insurance Co. of North America v. Pasakarnis, 451 So.2d 447 (Fla. 1984); Fernandez v. Vukosa, 108 Misc.2d 48, 436 N.Y.S.2d 919 (1980) (non-use of seat belt admissible for showing failure to mitigate damages). But see Fudge v. City of Kansas City, 239 Kan. 369, 720 P.2d 1093 (1986); Thomas v. Henson, 102 N.M. 326, 695 P.2d 476 (1985).
The absence of a duty to wear a restraint, however, does not mean that all seat belt evidence must be removed from the case. All relevant evidence is generally admissible. Evid.R. 7(f). When, as in the case at bar, it is claimed that a product has been defectively designed, the court and jury must apply a risk-utility analysis to determine whether the utility of the product outweighs its risk of harm. Johnson v. Salem Corp., 97 N.J. 78, 88 (1984). This by necessity mandates that the product be considered as an integrated whole. See Lowe v. Estate Motors Ltd., 428 Mich. 439, 410 N.W.2d 706, 720 (1987). Part of the risk-utility analysis entails consideration of (1) the "safety aspects of the product," and (2) "the user's ability to avoid danger by the exercise of care in the use of the product." Cepeda v. Cumberland Engineering Co., Inc., 76 N.J. 152, 174 (1978), overruled in part by Suter v. San Angelo Foundry & Machine Company, 81 N.J. 150 (1979). Evidence of the existence and recommended usage of available seat belts was admissible as bearing on these factors. That Dr. Siren was not using *138 a seat belt was admissible, despite the fact that he had no statutory or common law duty to wear the seat belt and could not be faulted for failing to do so, in order that the jury could fully understand the dynamics of the happening of the accident.
The use of that evidence, however, required a clear jury instruction as to its use and limitations for several reasons. First, it was necessary that the jury be made aware that the evidence was to be considered in light of the evidence presented concerning the general public's practices and standards concerning seat belt use in and about the time of sale; second, the jury had to be instructed on how to use the evidence in applying the two above-mentioned factors in the risk-utility analysis, and third, it was imperative that the jury be cautioned that the evidence was not to be considered on the issue of decedent's negligence or fault.
We are convinced that deficiencies in the jury instructions necessitate reversal as they rise to the level of plain error. R. 1:7-2; R. 2:10-2. Volkswagen elicited evidence concerning the availability of seat belts and the use of the seat belts by Dr. Siren. On cross-examination, Dr. Siren's widow was questioned about Dr. Siren's use of seat belts in the past and on the day of the accident. Plaintiff's engineering expert was similarly questioned. On direct examination, one of Volkswagen's experts, MacKay, an injury analyst, testified at great length on the use and effectiveness of seat belts in preventing injuries generally, and on the fatal injuries to Dr. Siren specifically. MacKay opined that the seat belt was the only means of guarding against ejection from an automobile in a severe crash and that Dr. Siren would have survived with minor injuries had he been wearing a seat belt. Another of Volkswagen's witnesses, Siebert, a seat belt expert, testified that seat belts were essential to prevent ejection from a vehicle and an integral part of a car's anti-ejection system. Volkswagen's counsel noted during summation that if Dr. Siren had been wearing the available seat belt, then he would not have been ejected from the car.
*139 Contributory negligence was not an issue in this design defect case. Cf. Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 562-64 (1980). The seat belt evidence could only be directed to the issue of design defect under the risk-utility analysis. (See Lowe, 428 Mich. at 450-70, 410 N.W.2d at 710-19, which deals extensively with the issue of the admissibility of the failure to use seat restraints on the question of comparative negligence.) However, the jury may well have believed it could consider that Dr. Siren's failure to use a seat belt constituted negligence.
The admitted testimony, especially MacKay's, essentially took the position that Dr. Siren's failure to use the seat belt caused his death. Even though defense counsel in his summation did not directly use this testimony against plaintiff's case, a limiting instruction was necessary so that the jury itself would not utilize this evidence to improperly attribute negligence to Dr. Siren. No such limiting instruction was given. On retrial such comments are to be avoided. The sole purpose of the seat restraint evidence is with regard to whether the design of the vehicle as a whole was a safe design, as equipped with seat belts and considering the non-use of seat belts by a significant segment of the population, even with the simplified system employed by Volkswagen at the time. The jury instruction must point out that failure to wear a seat belt is to be considered only as a factor in application of the risk-utility theory. Cepeda, 76 N.J. at 177; Soler v. Castmaster, Div. of H.P.M. Corp., 98 N.J. 137, 151 (1984); Brown v. United States Stove Co., 98 N.J. 155, 169 (1984); M. and Wife v. Schmid Laboratories, Inc., 178 N.J. Super. 122, 126 (App.Div. 1981).
The jury instructions were general with no tailoring of the instructions to the factual situation presented to assist the jury in understanding the legal framework of the case. See Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, 210-11 (1984). The general charge on risk-utility analysis factors and the general charge on intervening cause were inadequate to give the jury proper guidance in answering the interrogatories given *140 them. No mention of the seat belt evidence was made in the jury instructions. That evidence was therefore available to the jury for any purpose it chose. The evidence had the clear capacity to cause the jury to attribute sufficient negligence to Dr. Siren to prejudice plaintiff's claim.
In accord with our view that the purposes for which such evidence is used may be limited by an appropriate jury charge is the opinion of the Supreme Court of Michigan in Lowe, supra. There, the court held, inter alia, that in "crashworthiness" cases, seat-restraint evidence is admissible for the purpose of defending the design of a vehicle as a whole. However, the court added that in design defect cases "it is the design of vehicle which is at issue, and not the plaintiff's conduct in failing to use the provided seat-restraint system." 410 N.W.2d at 721.
In Seese v. Volkswagenwerk A.G., 648 F.2d 833, 841-43 (3d Cir.), cert. den. 454 U.S. 867, 102 S.Ct. 330, 70 L.Ed.2d 168 (1981), the court affirmed a jury verdict finding Volkswagen's window retention system to be defectively designed. Applying North Carolina law, the court ruled that there was no contributory negligence despite the fact that the plaintiffs failed to wear seat belts. Ibid. The jury instruction in Seese correctly removed any "seat belt considerations" from the jury because of testimony from Volkswagen's principal expert witness that Volkswagen's window retention system was not designed with the assumption that seat belts would be used by the vehicle occupants. Thus, it would have been irrelevant for the jury to consider seat belts relative to the design defect. Id. at 842-43.
In Daly v. General Motors Corp., 20 Cal.3d 725, 144 Cal. Rptr. 380, 575 P.2d 1162, 1175 (1978), the court ordered a new trial because, inter alia, the trial court committed prejudicial error in admitting evidence of a driver's failure to use seat belts. The court specifically noted that no restrictions were placed on the conclusions that the jury could draw from this failure. Ibid. This lack of judicially-imposed restrictions was *141 error because the jury could have erroneously believed that the plaintiff's negligent conduct barred his recovery in the absence of a jury instruction to the contrary. Ibid.
In Caiazzo v. Volkswagenwerk A.G., 647 F.2d 241, 246 (2d Cir.1981), the plaintiffs were ejected from a Volkswagen van following a collision when they were not wearing seat belts. Applying New York law, the district court limited the jury's use of the seat belt evidence only to the damages issue. Ibid. The Court of Appeals approved the district court's limiting jury instruction. Ibid. In Wilson v. Volkswagen of America, Inc., 445 F. Supp. 1368, 1371-73 (E.D.Va. 1978), a driver, not wearing a seat belt, was injured when the roof of his car collapsed during a rollover. The court admitted evidence of the non-use of the seat belt for mitigation of damages, but expressly stated that "the non-use evidence would not be allowed carte blanche." Id. at 1373. The court then gave a detailed jury instruction which incorporated the facts and evidence in the case within the framework of the law. Id. at 1371-73.
A specific instruction is also required so that the jury does not erroneously believe that if it finds the vehicle to be safe when the user wears a seat belt that such a finding would be conclusive on the issue of whether a design defect existed. Quite the contrary, the jury in applying the risk-utility analysis must be instructed to consider the duty of Volkswagen to protect that known, substantial segment of the population which could not readily accept the use of seat belts at the time. While it was, according to the undisputed evidence, known in 1980 and 1981 that the majority of drivers of Volkswagen's vehicles would not be wearing seat belts, the determination of the weight to be given that evidence in applying the risk-utility analysis should be left to the jury.
The jury instructions here were deficient because they did not state that the jury should consider the seat belt evidence only to determine whether a design defect existed. Just as importantly, the instructions did not state that Dr. Siren's failure to wear *142 a seat belt should not preclude recovery. The seat belt evidence was allowed into the jury room with no limitation or direction on its use. This was plain and reversible error.
We reverse and remand for a new trial.