Kyle **OLSON**, Plaintiff,

v.

**FORD MOTOR COMPANY**, Defendant.

No. C5–96–915.

Supreme Court of Minnesota.

Feb. 13, 1997.

Dean K. Adams, Craig M. Byram, Alderson, Ondov, Leonard, Sween & Rizzi, P.A., Austin, for Plaintiff.

Donald M. Lewis, Wendy F. Lumish, Janell M. Gabor, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, for Defendant.

Tyrone P. Bujold, Mullen J. Dowdal, Robins, Kaplan, Miller & Ciresi, Minneapolis, for amicus curiae Minn. Trial Lawyers Ass'n.

Mark S. Olson, Cynthia J. Atsatt, Oppenheimer Wolff & Donnelly, Minneapolis, for amicus curiae Product Liability Advisory Council, Inc.

OPINION

KEITH, Chief Justice.

This case comes to us on an Order of Certification issued by the United States District Court for the District of Minnesota pursuant to Minn.Stat. § 480.061 (1996) (Uniform Certification of Questions of Law Act). The certified question is as follows:

Does Minn.Stat. § 169.685, subd. 4, bar the introduction of evidence of the plaintiff's personal seat belt use in a crashworthiness action alleging the seat belt, itself, was negligently designed or manufactured?

We answer the question in the affirmative.

I.

On December 30, 1993, Kyle Olson was injured when the 1985 Ford F–150 truck that he was driving collided with another vehicle on Minnesota Highway 29. Olson claims he was wearing a factory-installed seat belt at the time of the collision and that the seat belt failed, materially contributing to his injuries.

Olson brought suit in Mower County District Court against Ford Motor Company, manufacturer of the truck. He alleged that the truck was not "crashworthy" because of the defective seat belt restraint system and sought recovery under theories of strict liability, negligence, and breach of warranty. After successfully removing the case to federal district court, Ford filed a motion for summary judgment on all counts. Ford argued that summary judgment was appropriate because evidence of Olson's alleged use of the truck's seat belts would be inadmissible at trial under Minn.Stat. § 169.685, subd. 4—known as the "seat belt gag rule."

In considering Ford's motion, the federal district court determined that its resolution of this issue would require a definitive interpretation of the state gag rule law. Accordingly, the federal district court certified the question before this court.

Olson raises essentially the same arguments against application of the seat belt gag rule in this case as were unsuccessfully raised before the Minnesota Court of Appeals this past year by the plaintiff in *Anker v. Little*, 541 N.W.2d 333, 340 (Minn.App.

1995), *pet. for rev. denied* (Minn. Feb. 9, 1996). Olson criticizes the result in *Anker,* and challenges the application of the seat belt gag rule in this case both on statutory and constitutional grounds.[1] He contends: (1) that by its plain language, Minn.Stat. § 169.685, subd. 4, does not apply to crashworthiness cases; (2) that interpreting the seat belt gag rule to bar a plaintiff's crashworthiness action for a defective seat belt produces an absurd result, not contemplated by the legislature; and, finally, (3) that such an interpretation of the statute would be violative of both the federal and state constitutions.

## II.

■ This case requires us to determine whether Minnesota's seat belt gag rule bars seat belt evidence when a plaintiff's cause of action is predicated on the failure of the seat belt itself under the crashworthiness doctrine.[2]

■ When interpreting a statute, our function is to ascertain and effectuate the intention of the legislature. Minn.Stat. § 645.16 (1996). If the statute is free from all ambiguity, we look only to its plain language. *Id.; Tuma v. Commissioner of Econ. Sec.,* 386 N.W.2d 702, 706 (Minn.1986). When, however, the literal meaning of the words of a statute would produce an absurd result, we have recognized our obligation to look beyond the statutory language to other indicia of legislative intent. *Wegener v. Commissioner of Revenue,* 505 N.W.2d 612, 617 (Minn.1993); *see* Minn.Stat. § 645.17(1).

The seat belt gag rule, Minn.Stat. § 169.685, subd. 4, specifically provides:

Proof of the use or failure to use seat belts or a child passenger restraint system as described in subdivision 5, or proof of the installation or failure of installation of seat belts or a child passenger restraint system as described in subdivision 5 shall not be admissible in evidence in any litigation involving personal injuries or property damage resulting from the use or operation of any motor vehicle.

■ In *Anker,* the court of appeals determined that "[t]his language is unambiguous in prohibiting the admission of evidence of the use or nonuse of seat belts in *any* litigation involving personal injury that results from the use or operation of a motor vehicle." 541 N.W.2d at 336. We agree.

■ We find Olson's contention that crashworthiness claims fall outside the ambit of the seat belt gag rule unpersuasive. On its face, the statute bars evidence of seat belt use or nonuse in *"any* litigation * * * *resulting from* the use or operation of any motor vehicle." Minn.Stat. § 169.685, subd. 4 (emphasis added). This broad statutory preclusion is in no way limited to injuries directly attributable to the act or defect *actually causing* a motor vehicle accident, but instead manifestly extends to all injuries *resulting from* the same accident. *See Swelbar v. Lahti,* 473 N.W.2d 77, 79 (Minn.App.1991) ("[T]he statute unambiguously bars evidence of use or nonuse of seat belts or child restraints in any litigation 'involving' personal injury resulting from the use of a motor vehicle."); *Wilson v. Volkswagen of America, Inc.,* 445 F.Supp. 1368, 1374 (E.D.Va.1978) (contrasting Virginia's narrow gag rule statute to Minnesota's, which the court found precludes seat belt evidence "for any purpose whatsoever.").

Absent some other justification allowing us to consider legislative intent, we need look no further than the express language of the statute. *Tuma,* 386 N.W.2d at 706. As prescribed in Minn.Stat. § 645.16, "When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Christopherson v. Federal Land*

---

1. Ford contends that Olson waived any constitutional arguments by failing to raise them before the federal district court. *See infra* Part IV.

2. The crashworthiness doctrine was first recognized in 1968 by the Eighth Circuit in *Larsen v. General Motors Corp.,* 391 F.2d 495, 502 (8th Cir.1968). Under the doctrine, when the defec-

tive design or manufacture of a vehicle does not actually cause a crash but instead increases the severity of injuries suffered by occupants, manufacturers may be liable for injuries over and above those which otherwise would have resulted. *Id.* at 503.

*Bank of St. Paul,* 388 N.W.2d 373, 374 (Minn. 1986) ("Here, the language of the statute is precise and unambiguous and we must give the effect to the statute as written.").

### III.

Olson argues that even if we determine that the plain language of the statute applies to crashworthiness claims, this court must consider other indicia of legislative intent in order to avoid an "absurd" result. *See* Minn.Stat. § 645.17(1) (establishing a presumption in ascertaining legislative intent that "[t]he legislature does not intend a result that is absurd, impossible of execution, or unreasonable"); *see also Glyn–Jones v. Bridgestone/Firestone, Inc.,* 857 S.W.2d 640, 643–44 (Tex.Ct.App.1993) (holding that barring evidence of a defective seat belt would be "arbitrary and unreasonable" in light of the Texas statute's stated purpose of promoting safety on public highways through mandatory seat belt use), *aff'd on other grounds,* 878 S.W.2d 132, 133–34 (Tex.1994). We will only exercise our power to undertake such an expanded inquiry when a party demonstrates that the statute's plain language utterly departs from a clearly expressed goal of the legislature. *See Wegener,* 505 N.W.2d at 617 (recognizing this court's obligation to go beyond the literal language of a statute when a literal interpretation "leads to absurd results or unreasonable results which utterly depart from the purpose of the statute").

Olson contends that the sole purpose of the legislature in enacting the seat belt gag rule in 1963 was to protect a plaintiff from being penalized for contributory negligence for failure to wear a seat belt. Hence, Olson argues that denying a plaintiff a cause of action based on the seat belt gag rule is absurd and unreasonable in view of his interpretation of the legislative intent underlying the rule. He cites *Cressy v. Grassmann,* 536 N.W.2d 39, 42 (Minn.App.1995) (stating that the seat

belt gag rule assures an accident victim will not be denied a fair recovery because of the failure to use seat belts), *pet. for rev. denied* (Minn. Sept. 28, 1995), and *Lind v. Slowinski,* 450 N.W.2d 353, 359 (Minn.App.1990) ("The specific intent of the legislature was to remove from jury consideration the use or nonuse of seat belts."), *pet. for rev. denied* (Minn. Feb. 21, 1990), as suggesting the legislature was concerned only with protecting motorists in enacting the seat belt gag rule.

In evaluating the legislative purpose behind the rule, we find it significant that the seat belt gag rule was enacted as part of a measure that required manufacturers to install seat belts in automobiles manufactured after January 1, 1964. *See* Minn.Stat. § 169.685, subd. 1; *Anker,* 541 N.W.2d at 337–38. That this measure, in fact, imposed a substantial burden on manufacturers is more apparent when we remember that, in 1963, there was still considerable debate as to the efficacy of seat belts as a safety device. Some studies at that time suggested that seat belts might actually aggravate injuries suffered by a motorist in a collision. *See Romankewiz v. Black,* 16 Mich.App. 119, 124, 167 N.W.2d 606, 609 n. 6 (1969) (citing studies purportedly demonstrating that seat belts could exacerbate injuries suffered by a motorist in a crash). Viewed in this context, the legislature's ban on evidence of *use* of seat belts in the seat belt gag rule might logically have been designed to shield manufacturers from lawsuits should state-mandated seat belts ultimately result in injuries to motorists.[3]

Because it simply is not clear that the legislature intended to benefit motorists alone in enacting the seat belt gag rule, we cannot say that applying the plain language of the statute to crashworthiness cases produces an absurd result that utterly confounds a clear legislative purpose.[4] *See Wegener,*

---

3. Both houses of the legislature, in fact, considered bills to eliminate the seat belt gag rule while *Anker* was pending, but took no action even after the court of appeals issued its decision. *See* Senate File No. 1781; House File No.2004. Ford argues that because the legislature was presumably aware of the *Anker* court's construction of the statute, and yet failed to act in response, the legislature evinced an intent to ad-

here to *Anker's* application of the seat belt gag rule to crashworthiness cases.

4. Olson's reliance on caselaw from other jurisdictions is similarly unavailing. Nearly all of the cases he cites were decided on the basis of the *common law* and, thus, shed little light on interpretation of this state's statutory scheme. *See Wilson,* 445 F.Supp. at 1371; *Daly v. General*

505 N.W.2d at 617. We, therefore, conclude that the plain language of Minn.Stat. § 169.685, subd. 4, bars the introduction of evidence of a plaintiff's personal seat belt use in a crashworthiness action alleging the seat belt itself was negligently designed or manufactured.

In view of the many advances in automobile safety over the past 30 years and the enactment of laws mandating the *use* of both child restraint systems and seat belts, it may be appropriate for the legislature to review the continuing desirability of the seat belt gag rule. *See* Minn.Stat. §§ 169.685, subd. 5, 169.686. Our role, in any case, is not to challenge the wisdom of the legislature's act from a distance, but rather to give effect to its will as expressed in the unambiguous language of the statute. *See Tuma*, 386 N.W.2d at 706.

## IV.

Finally, we consider Olson's challenge to the constitutionality of applying Minn.Stat. § 169.685, subd. 4, to effectively bar his crashworthiness action. Olson raises three separate challenges to such an interpretation based on the Remedies Clause of article I, section 8 of the Minnesota Constitution; the Equal Protection Clauses of the Minnesota and United States Constitutions; and the Due Process Clauses of the Minnesota and United States Constitutions.

Ford counters that Olson waived his right to challenge the constitutionality of the statute by failing to raise the issue before the federal district court. Ford cites our decisions in *Ramsey County v. Robert P. Lewis Co.*, 77 Minn. 317, 318, 79 N.W. 1003, 1003 (1899) (refusing to allow a defendant to raise

the conflict between a state law and the federal constitution when "that question has not been certified up to us"); *Pierce v. Foley Bros., Inc.*, 283 Minn. 360, 367–68, 168 N.W.2d 346, 351 (1969) (refusing to allow a defendant to raise the general question of the appropriateness of an order denying summary judgment when a narrow jurisdictional issue alone had been certified); *Automotive Merchandise, Inc. v. Smith*, 297 Minn. 475, 477, 212 N.W.2d 678, 679 (1973) (refusing to hear a constitutional challenge on appeal when the "issue of constitutionality [was] raised for the first time in this court and at no time challenged or litigated in the court below").

We strongly caution litigants that as a rule, this court will consider only the narrow question certified to us. *See Robert P. Lewis Co.*, 77 Minn. at 318, 79 N.W. at 1003; *Pierce*, 283 Minn. at 367–68, 168 N.W.2d at 351. However, because we find no merit in Olson's constitutional challenges, the question of waiver in this case is academic. Therefore, in the interests of judicial economy, we briefly take up the constitutionality of applying the plain language of the statute to crashworthiness claims here. *See Waste Recovery Coop. of Minnesota v. County of Hennepin*, 517 N.W.2d 329, 330 n. 3 (Minn.1994). This court upholds a statute against a constitutional challenge unless it proves unconstitutional beyond a reasonable doubt. *Estate of Jones v. Kvamme*, 529 N.W.2d 335, 337 (Minn.1995).

The Remedies Clause of article I, section 8 provides that every person is entitled to a "certain remedy * * * for all injuries or wrongs * * *." Minn. Const. art. I, § 8. This court has recognized, and Olson

*Motors Corp.*, 20 Cal.3d 725, 746, 144 Cal.Rptr. 380, 392–93, 575 P.2d 1162, 1174–75 (1978); *Volkswagen of America, Inc. v. Long*, 476 So.2d 1267, 1269 (Fla.1985); *Seward v. Griffin*, 116 Ill.App.3d 749, 762–63, 72 Ill.Dec. 305, 452 N.E.2d 558, 569 (1983); *McElroy v. Allstate Ins. Co.*, 420 So.2d 214, 216–17 (La.Ct.App.1982), *writ denied*, 422 So.2d 165 (La. Nov. 12, 1982); *Lowe v. Estate Motors Ltd.*, 428 Mich. 439, 474, 410 N.W.2d 706, 721 (1987); *Siren v. Behan*, 224 N.J.Super. 130, 139–41, 539 A.2d 1244, 1249–50 (1988); *Dahl v. Bayerische Motoren Werke (BMW)*, 304 Or. 558, 564–68, 748 P.2d 77, 81–83

(1987); *Foley v. City of West Allis*, 113 Wis.2d 475, 489–90, 335 N.W.2d 824, 831 (1983). The primary case cited which implicates a statutory gag rule is also distinguishable. The Texas gag rule statute at issue in *Bridgestone/Firestone* was enacted as part of a measure requiring mandatory *use* of seat belts and did not impose any simultaneous *burden* on manufacturers. 878 S.W.2d at 134. Thus, while we must reach a contrary conclusion under our state's law, the Texas Supreme Court might plausibly have concluded that the legislature did not intend to benefit manufacturers in enacting that state's seat belt gag rule.

concedes, that the Remedies Clause does not guarantee redress for every wrong, but instead enjoins the legislature from eliminating those remedies that have *vested at common law* without a legitimate legislative purpose. *Hickman v. Group Health Plan, Inc.*, 396 N.W.2d 10, 14 (Minn.1986) (holding that the Remedies Clause of article I, section 8 protects only those causes of action which have vested at common law). Because the seat belt gag rule predated the 1968 inception of the crashworthiness doctrine in *Larsen v. General Motors Corp.* by 5 years, we conclude that Olson has failed to establish beyond a reasonable doubt that a remedy for crashworthiness actions had vested at common law at the time the legislature passed the seat belt gag rule in 1963. *See Larsen*, 391 F.2d at 502 (recognizing a manufacturer's liability for injuries over and above the injuries that probably would have occurred absent the defective design of the vehicle); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 383–84 (8th Cir.1992) (stating that the crashworthiness doctrine describes a manufacturers' duty, recognized since 1968, to produce a reasonably safe automobile).

█ Olson next argues that applying the seat belt gag rule to crashworthiness cases involving defective seat belts violates both the state and federal Equal Protection Clauses by impermissibly dividing Minnesotans into two groups: those "unlucky enough to be injured by defective seat belts" and those injured by other defectively designed or manufactured products. However, Olson's challenge must fail for two reasons. First, the seat belt gag rule by its own terms is even-handed insofar as it prevents *any party* from introducing evidence of both *use* and *failure to use* seat belts. Minn.Stat. § 169.685, subd. 4. In this sense, similarly situated parties are treated exactly the same under the statute. Moreover, Olson fails to meet his burden of proving that the legislative distinction was without a reasonable basis in view of the contemporaneous burden imposed on automobile manufacturers. *See Price v. Amdal*, 256 N.W.2d 461, 468 (Minn. 1977) (construing equal protection as satisfied when legislative distinctions are fashioned on some reasonable basis).

█ Olson's final constitutional argument is that applying the seat belt gag rule to his cause of action violates his right under the state and federal Due Process Clauses to "present all pertinent and material evidence without the imposition of burdensome restrictions." *See Yeager v. Chapman*, 233 Minn. 1, 10, 45 N.W.2d 776, 782 (1951). We employ a two-step due process analysis. *See In re Harhut*, 385 N.W.2d 305, 311–12 (Minn. 1986). First, we consider whether a substantive right of life, liberty or property is implicated. *See id.* at 311. Second, if a substantive right is implicated, we then balance the interests of the individual and the risk of erroneous deprivation of such interests, against the governmental interests at stake. *Id.* at 311. Under this test, Olson's claim must fail for his failure to establish beyond a reasonable doubt *either* that any substantive right is implicated in his claim *or* that his individual interests outweigh the legislative concerns addressed by even-handed application of the seat belt law.

## V.

The plain language of Minnesota's seat belt gag rule, Minn.Stat. § 169.685, subd. 4, extends to the introduction of evidence of a plaintiff's personal seat belt use in a crashworthiness action alleging the defectiveness of the seat belt itself. Such an interpretation neither produces an absurd result nor runs afoul of any constitutional imperative.

Certified question answered in the affirmative.

## SPECIAL CONCURRENCE

PAGE, Justice (concurring specially).

I concur in the result reached by the court in this case. I do so because the plain language of Minn.Stat. § 169.685, subd. 4 (1996), unambiguously precludes evidence of seat belt use or nonuse in any litigation. Further, I understand that the decision to preclude such evidence is the legislature's prerogative. Nonetheless, I find the result disturbing in light of Minnesota law mandating seat belt use.

The state requires the occupants of a motor vehicle to wear a seat belt, and failure to do so results in punishment by fine. Minn. Stat. § 169.686 (1996).[1] At the same time, under section 169.685, if an occupant's seat belt fails because it is defective and either causes or exacerbates the occupant's injury, no cause of action exists against the seat belt or vehicle manufacturer based on the defect because evidence of seat belt use is not admissible at trial. While it is the legislature's prerogative to exclude such evidence, I submit that the result produced runs against logic and is unfair. Although the seat belt gag rule's enactment in 1963 may have been the logical result of the "unproven" safety record of seat belts at the time, coupled with the manufacturers' simultaneous duty to install them in all vehicles, the safety benefits provided by seat belt usage are not "unproven" today. At a minimum, a plaintiff who is injured or whose injuries are exacerbated by a defective seat belt ought to have some recourse against the seat belt or vehicle manufacturer.

Currently, one need only pick up the newspaper on any given day to find out that there is a national debate concerning the safety of motor vehicle supplemental restraint systems, *i.e.*, airbags, much like the debate that occurred in 1963 with respect to seat belts. The controversy over airbag safety was prompted by the number of injuries and deaths to small adults, children, and infants as a result of airbag deployment in otherwise minor low speed/low impact accidents. I suspect that Minnesota's citizens will be shocked to learn that if they or one of their loved ones are killed or severely injured by the deployment of their vehicle's airbag in one of these low speed/low impact accidents, they will not have a cause of action against the vehicle's or the airbag's manufacturer. This is so even though there is no airbag "gag rule." It is so because auto manufacturers warn that for airbags to be effective, the vehicle's occupants must be properly buckled into the vehicle's seat belt and because under Minn.Stat. § 169.685, subd.4, as we interpret it today, evidence of the injured party's use of a seat belt could not properly be admitted into evidence. Such an outcome is simply wrong.

---

1. The statute states, in relevant part:

   **Subdivision 1. Seat belt requirement.** A properly adjusted and fastened seat belt, including both the shoulder and lap belt when the vehicle is so equipped, shall be worn by:
   (1) the driver of a passenger vehicle or commercial motor vehicle;
   (2) a passenger riding in the front seat of a passenger vehicle or commercial motor vehicle; and

   (3) a passenger riding in any seat of a passenger vehicle who is older than three but younger than 11 years of age.
   A person who is 15 years of age or older and who violates clause (1) or (2) is subject to a fine of $25. The driver of the passenger vehicle or commercial motor vehicle in which the violation occurred is subject to a $25 fine for a violation of clause (2) or (3) by a child of the driver under the age of 15 or any child under the age of 11.